# FOR PUBLICATION



ATTORNEYS FOR APPELLANTS:

**W. BRENT THRELKELD**
**BENJAMIN G. STEVENSON**
Threlkeld & Associates
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MARK K. DUDLEY**
**LISA DELEY**
Howard DeLey & Dudley, LLP
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JACOB KEY, TED J. BROWN ) | |
| and SALLY A. BROWN, ) | |
| Appellants, ) | |
| ) | |
| vs. ) | No. 48A02-1007-CT-812 |
| ) | |
| DEWAYNE HAMILTON, ) | |
| ) | |
| Appellee. ) | |

APPEAL FROM THE MADISON SUPERIOR COURT
The Honorable Dennis D. Carroll, Judge
Cause No.48D01-0905-CT-749

**February 28, 2012**

**OPINION – FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Jacob Key, Ted J. Brown, and Sally A. Brown (collectively "the Defendants") appeal the jury's verdict and trial court's judgment of $990,000 against them. They argue that the trial court erred in denying their motion for summary judgment, motion for judgment on the evidence, and motion for a directed verdict. They also argue that the trial court erred in instructing the jury on assumption of duty using the Restatement (Second) of Torts. Finding that a signaling driver may owe a duty of care to a third party motorist as a matter of law when his actions result in the reasonable reliance by the signaled driver that traffic is clear, we hold that the trial court did not err in denying the motions. We also hold that although the jury instruction for assumption of duty was given in error, it was harmless because it properly encapsulates Indiana's negligence law. We therefore affirm.

**Facts and Procedural History**

On August 11, 2008, Key, the Browns' employee, was driving a work truck for "Ted's Plumbing." Key was driving southbound on State Road 9[1] when he approached the intersection of State Road 9 and Huntsville Road, just northeast of Pendleton, Indiana. State Road 9 is a four-lane road with two lanes for northbound traffic and two lanes for southbound traffic, but the road narrows to one southbound lane a few hundred feet south of its intersection with Huntsville Road. Immediately north of this intersection, State Road 9 intersects with Market Street, which runs east-west, parallel to Huntsville Road.

---

[1] State Road 9 is also State Road 67 at this point. But for the sake of clarity, this opinion will refer to this road only as State Road 9.

Before Key could reach the intersection of State Road 9 and Huntsville Road ("the SR 9/Huntsville Rd intersection"), he was stopped in the outermost southbound lane in a line of traffic north of the intersection of State Road 9 and Market Street ("the SR 9/Market St intersection"). At the same time, John Owens was in his truck heading east on Market Street and was stopped at a stop sign at the SR 9/Market St intersection, waiting to make a left-hand turn onto northbound State Road 9. Because his lane of traffic was stopped by the stoplight at the SR 9/Huntsville Rd intersection, Key left an opening in the traffic when he stopped at the SR 9/Market St intersection so that the truck driven by Owens could enter the intersection. Key looked in his rear-view mirrors and did not observe any traffic approaching in the innermost southbound lane to his left. Key even got out of his truck, stood on the doorsill, looked north, and did not see any oncoming traffic. He then gave a "waving" hand signal to Owens indicating that "it was clear." Tr. p. 226.

Owens's view of the oncoming southbound traffic in the lane to Key's left was obstructed by Key's truck and the accumulated traffic in the lane behind Key. Owens therefore pulled out from Market Street, looked north, and crept out slowly trying to look for any traffic. Owens stated that he did not pull his truck out any differently than he would have had Key not waved to him, but he also stated that he would not have pulled out had Key not waved to him. As Owens moved his car into the northbound lane of State Road 9, his car was struck by a motorcycle being driving by Hamilton, who had been traveling on State Road 9 in the innermost southbound lane. The accident propelled

3

Hamilton over Owens's truck and onto the highway. It appears to be undisputed that Hamilton was traveling in excess of the posted speed limit.

A basic diagram demonstrating the location of the various parties and their vehicles immediately before the accident's impact is set forth below:[2]



[2] An over-sized aerial map was admitted as an exhibit at trial, but it was impractical to include a copy of that map in this opinion.

Hamilton was seriously injured as a result of the accident, and on May 14, 2009, he filed a complaint against Key, Ted's Plumbing, Inc., and Ted's Excavation, Inc. Hamilton amended his complaint to remove Ted's Plumbing and Ted's Excavation as defendants and to add Ted and Sally Brown as defendants based on their status as Key's employers. The Defendants filed a motion for summary judgment, arguing that Key owed no duty to Hamilton. The trial court denied this motion.[3]

The case then proceeded to trial. At the end of Hamilton's case-in-chief, the Defendants moved for judgment on the evidence, arguing again that Key owed no duty to Hamilton. The trial court denied this motion. The Defendants then renewed their motion for judgment on the evidence at the end of their case-in-chief, but the trial court denied the motion yet again. Before deliberation, the Defendants also challenged the jury instruction on assumption of duty that mirrored Restatement (Second) of Torts § 324A, arguing that the instruction did not correctly state the law and was not supported by the evidence in the record. The trial court gave the instruction over this objection.

The jury returned a verdict in favor of Hamilton. The jury allocated fault for the accident as follows: 5% to Hamilton, 45% to Key, and 50% to non-party Owens. The jury also determined that Hamilton's damages were $2.2 million. The trial court

---

[3] The Defendants filed a motion to certify this order for interlocutory appeal. Hamilton objected to the motion to certify, and the trial court denied the motion.

therefore entered judgment against the Defendants in the amount of $990,000. The Defendants now appeal.[4]

**Discussion and Decision**

The Defendants raise four issues on appeal, which we consolidate and restate as: (1) whether the trial court erred in denying the Defendants' motions – motion for summary judgment, motion for judgment on the evidence, and motion for directed verdict, (2) whether Hamilton showed that Key's conduct was the proximate cause of his injuries, and (3) whether the trial court erred in instructing the jury on Restatement (Second) of Torts § 324A.

**I. Defendants' Motions**

When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269 (Ind. 2009). All facts established by the designated evidence, and all reasonable inferences from them, are to be construed in favor of the nonmoving party. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind. 2007).

The standard of review on a challenge to a directed verdict, also known as judgment on the evidence, is the same as the standard governing the trial court in making

---

[4] We heard oral argument in this case on October 5, 2011, at the Indiana University Maurer School of Law in Bloomington, Indiana. We would like to once again extend our thanks to the students, staff, faculty, and administration of the school for their hospitality, and we commend counsel for the quality of their written and oral advocacy.

its decision. *State Farm Mut. Auto. Ins. Co. v. Noble*, 854 N.E.2d 925, 931 (Ind. Ct. App. 2006), *trans denied*. Judgment on the evidence is proper where all or some of the issues are not supported by sufficient evidence. *Id.* We will examine only the evidence and the reasonable inferences that may be drawn therefrom that are most favorable to the non-movant, and the motion should be granted only where there is no substantial evidence to support an essential issue in the case. *Id.* If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*; *see also* Ind. Trial Rule 50(A).

Hamilton's complaint alleged negligence on the part of the Defendants, which is comprised of three elements: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty by the defendant, and (3) an injury to the plaintiff as a proximate result of the breach." *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007). But consideration of duty and breach of duty always begins with consideration of the venerable legal concept of the "reasonable person." As stated in the Restatement (Second) of Torts § 283 (1965), "[u]nless the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable [person] under like circumstances." Negligence occurs when conduct falls below this standard. "Lack of reasonable care that an ordinary person would exercise in like or similar circumstances is the factor upon which the presence or absence of negligence depends." *Jones v. Gleim*, 468 N.E.2d 205, 207 (Ind. 1984).

The negligence issue in this case therefore turns generally on what ordinary persons in the positions of Hamilton, Owen, and Key would have expected and how such

7

ordinary persons would have conducted themselves under circumstances like or similar to those before us. More specifically, the question of negligence is whether Key's conduct in signaling Owens breached a duty to Hamilton that reasonable persons in Key's, Owen's, and Hamilton's respective positions would have recognized and expected to exist.

Duty is usually created by the normal expectations of our civil society. "Those [risks] against which [an] actor is required to take precautions are those which society, in general, considers sufficiently great to demand preventive measures." W. Prosser & W. Keeton, Prosser & Keeton on Torts § 31 p. 170. (5th ed. 1984). "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Id.* at § 53 p. 356. "The duty of reasonable care is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by the breach of the duty." *Webb v. Jarvis*, 575 N.E.2d 992, 997 (Ind. 1991) (citing *Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562, 574 (Ind. Ct. App. 1986), *reh'g denied*, *trans. denied*). Many motor vehicle statutes create duties.[5]

---

[5] *See, e.g.*, Ind. Code § 9-21-5-4(1) (providing that a driver has a duty to drive at a reduced speed when approaching and crossing an intersection and railway grade crossing); *Id.* § 9-21-8-2(b) (providing that a driver proceeding at less than the normal speed of traffic has a duty to drive in the right-hand lane); *Id.* § 9-21-8-26 (providing that a driver may not stop or suddenly decrease speed without first giving appropriate signal to drivers immediately to the rear, when there is an opportunity to give such a signal); *Id.* § 9-21-8-32 (providing that a driver has a duty to stop at an intersection where a stop sign is erected and yield to vehicles that are not required to stop); *Id.* § 9-21-8-37 (providing that a driver has a duty to avoid colliding with a pedestrian and exercise proper caution "upon observing a child or an obviously confused, incapacitated, or intoxicated person.").

8

Hamilton has directed our attention to the single Indiana case with similar facts to those before us. In *Claxton v. Hutton*, 615 N.E.2d 471 (Ind. Ct. App. 1993), Wagner was traveling south when she stopped at a stop sign at an intersection with a street that was a two-lane, one-way street running west. Hutton was driving a school bus westbound on that street in the northernmost lane. As Hutton approached the intersection, she stopped the school bus a few feet short of the intersection. Hutton signaled to Wagner to "go ahead" through the intersection. *Id.* at 473. Wagner waited momentarily and then proceeded through the intersection. As she did, she collided with a car driven by Navarro, who was traveling west in the lane to the south of the school bus. *Id.* Wagner had not seen Navarro's car before the collision. *Id.*

After being sued by Navarro, Wagner filed a third-party claim against Hutton. Eventually, the trial court entered summary judgment in favor of Hutton. On appeal, Hutton argued that her duty of reasonable care to motorists and pedestrians did not extend to any act or omission associated with motioning or signaling to another driver. The *Claxton* court did not agree and held that it could not say, as a matter of law, that Hutton's signal was merely a courteous gesture and that Hutton therefore did not assume a duty to Wagner by signaling to her. *Id.* at 475. At the same time, the court held that it could not say as a matter of law that Hutton's signal meant only that Wagner could safely pass in front of the bus. *Id.* The court therefore concluded "that the question of whether Hutton assumed any particular duty with regard to Wagner may only be resolved by examining the particular facts of this case, making summary judgment inappropriate." *Id.*

9

A careful reading of *Claxton* discloses that it is distinguishable from the facts before us in at least one respect. At issue in *Claxton* was whether the *signaling* motorist owed a duty to the *signaled* motorist, i.e., whether Hutton owed a duty to Wagner. The issue arising from our facts is not whether the signaling motorist, Key, owed a duty to the signaled driver, Owens. Instead, our issue is whether Key, as the signaling motorist, owed a duty to a third person, Hamilton, who collided with the signaled driver, Owens. But this distinguishing factor in *Claxton* is not significant to our analysis.

However, the Defendants appear to be correct that this precise issue has not yet been directly addressed by any Indiana court. But, whether a duty exists is generally a question of law, *Estate of Heck v. Stoffer*, 786 N.E.2d 265, 268 (Ind. 2003), and in *Webb*, our Supreme Court articulated a balancing test to determine whether a duty exists. In order to impose a duty at common law, the court must balance (1) the relationship between the parties, (2) the reasonable foreseeability of the harm to the person injured, and (3) public-policy concerns. We hold that the trial court did not err in denying all of the Defendants' motions, as a balancing of the *Webb* factors under these circumstances shows that Key owed a duty of care to Hamilton as a matter of law.

### A. Relationship Between the Parties

Admittedly, there is no natural and readily apparent relationship between Key and Hamilton. However, looking at the circumstances of this case, we find that there was in fact a relationship between the two parties based on these particular facts.

10

In this case, Owens, as the signaled driver, undoubtedly had a relationship with Hamilton when turning left in front of him. Statutes make it clear that drivers have a duty to yield to drivers already in an intersection. Indiana Code section 9-21-8-31 provides:

> (a) A person who drives a vehicle *shall* do the following:
> > (1) Stop as required under this article at the entrance to a through highway.[6]
> > (2) *Yield the right-of-way to other vehicles that have entered the intersection from the through highway or that are approaching so closely on the through highway as to constitute an immediate hazard.*
> (b) After yielding as described in subsection (a)(2), the person who drives a vehicle may proceed and persons who drive other vehicles approaching the intersection on the through highway shall yield the right-of-way to the vehicle proceeding into or across the through highway.

(emphasis added). Similarly, Indiana Code section 9-21-8-32 provides:

> A person who drives a vehicle *shall* stop at an intersection where a stop sign is erected at one (1) or more entrances to a through highway that are not a part of the through highway and proceed cautiously, *yielding to vehicles that are not required to stop*.

(emphasis added).

But while Owens, the signaled driver, had a duty to yield to Hamilton in the intersection, the issue is not whether Owens had a duty, he did, but rather whether Key, the signaling driver, also had a duty to Hamilton through his actions. We recognize that other states have found no liability for the signaling driver because of a non-delegable

---

[6] This appears to be a reference to Indiana Code section 9-21-4-11, which provides:

The Indiana department of transportation, with reference to state highways and highway routes through cities, and local authorities, with reference to other highways under their jurisdiction, may, upon an engineering and traffic investigation, designate:
(1) through highways and erect stop or yield signs at specified entrances to the highways; or
(2) an intersection as a stop or yield intersection and erect stop or yield signs at one (1) or more entrances to the intersection.

11

duty on the part of the signaled driver. *Gilmer v. Ellington*, 70 Cal. Rptr. 3d 893 (Cal. Ct. App. 2008); *Arnold v. Chupp*, 92 S.E.2d 239, 243 (Ga. Ct. App. 1956); *Peka v. Boose*, 431 N.W.2d 399 (Mich. Ct. App. 1988); *Van Jura v. Row*, 191 N.E.2d 536 (Ohio 1963). But we do not believe the analysis is so simple. Just because Owens had a duty to yield to Hamilton at the intersection does not preclude others, including Key, from also having a duty of care to Hamilton or any other motorist on the road at the same time. For example, there can be no doubt that the injured Hamilton owed a duty of care when he entered that intersection. Likewise, had there been a police officer directing traffic at the scene, he would have also owed a duty of care. The point is that more than one person may have a duty of care in a particular situation. Consequently, the question is not whether Key was taking away Owens's duty toward Hamilton in this situation; rather, the question is whether he had his own individual duty toward Hamilton.[7]

Turning to the relationship between Key and Hamilton, Key admittedly did not have any knowledge of Hamilton's presence and Hamilton did not have any knowledge of Key's signal to Owens before the collision. However, the circumstances surrounding the accident are such that they nonetheless point to a relationship between Key and Hamilton as both were driving on the same road, at the same time, at the same location. Further, before the accident occurred, Key investigated the traffic behind him thoroughly before determining that it was clear for Owens to turn left. Key was not just sitting in his truck, signaling to Owens, indicating that he only spoke for himself when he said that he

---

[7] Once the various duties are determined, the jury then apportions fault to each under our comparative fault statute. Here, Owens, Hamilton, and Key were assigned fault for this accident.

12

was going to allow Owens to turn left in front of him. Rather, Key got out of his truck, stood on the doorsill, and examined the traffic situation behind him. It was only after that thorough inspection that he waved Owens through the intersection. Owens, watching Key through all of this, testified that he relied upon Key's "all clear" before pulling out.

Based on these circumstances, we find that these actions were sufficient to create a relationship between Key and Hamilton under this first *Webb* factor.

### B. Reasonable Foreseeability of the Harm

Under the *Webb* analysis, harm is foreseeable if "the person actually harmed was a foreseeable victim and . . . the type of harm actually inflicted was reasonably foreseeable." *Webb*, 575 N.E.2d at 997. Hamilton's injuries were not only a natural consequence of Key's actions, they were also foreseeable as a result of Key's actions. Although Owens admittedly did not pull his truck out any differently than he would have had Key not signaled to him, Appellant's Br. p. 30, he also admitted that he would not have pulled out into the intersection at all had Key not signaled to him. Appellant's App. p. 100. Key further admitted at trial that waving someone into an intersection can place the signaled person in a position of danger if there is oncoming traffic. *See* Tr. p. 217. With this reliance by Owens and Key's awareness of the potential danger resulting from his actions, it is reasonable to infer that Hamilton's injuries were foreseeable.

Additionally, before the accident occurred, Key investigated the traffic behind him before determining that it was clear for Owens to turn left. Key was not just engaging in the typical courtesy wave, indicating that he only was going to allow Owens to pass in front of him. Instead, he engaged in a thorough examination of the traffic behind him

13

before waving Owens through, indicating that it was "all clear."  Key genuinely believed the intersection was clear, as he testified that he would not put someone in the "position of danger" if there was oncoming traffic."  *Id.*

Because of this investigation on the part of Key, it was reasonably foreseeable that Owens would rely on this signal and pull into the intersection without being able to see oncoming traffic himself due to the obstruction caused by Key's truck.  If there was an unseen oncoming motorist, like Hamilton, it would be foreseeable that Owens could collide with him in the intersection as a result of his reasonable reliance on Key's "all clear" signal.

### C. Public Policy Concerns

Society has an expectation that individuals will be held liable for the results of their actions.  Public policy, therefore, demands that we hold an individual responsible for the reasonably foreseeable results of his behavior; allowing an individual to escape liability for damage he causes would fly in the face of the normal expectations of our civil society.  As a result, we find that imposing a duty of care upon Key and therefore allowing a jury to weigh the facts and apportion fault as it deemed appropriate is in furtherance of sound public policy.

Specifically, the injuries sustained as a result of Key's actions were not too remote that holding Key liable would be illogical, unfair, or risk not putting a potential tortfeasor on notice that he could be held liable for his actions.  Imposing liability on Key would also not place an unreasonable burden on him; he did not have to act in the way that he did, but once he decided to, society demands that he should be held liable for the

14

reasonably foreseeable results of his actions. Finally, there is a sensible stopping point to this creation of a duty. The commonly used courtesy wave will never be sufficient to create a duty on the part of the signaling driver. It is only when a driver engages in such a thorough examination of traffic in order to ensure another driver's safety and gives an "all clear" signal, as was the case here, that a duty can be found.

Further, we also do not share our colleague's fears that this will discourage courteous driving behavior or diminish the responsibility of signaled drivers. Finding that Key owed a duty to Hamilton will not discourage courteous driving behavior in Indiana. This is so because the ordinary "wave on" would not result in liability. This decision will not generate liability for the courteous driver who, for example, allows someone to pass through an intersection with a four-way stop sign ahead of him. That behavior does not create a relationship between the two drivers, nor should it. If that courteous driver, however, were to engage in such behavior as Key did to ensure the other driver's safety in passing through the intersection, behavior that was reasonably relied upon by Owens, then he will be held to have a duty to that other driver. This will neither be a shock to our citizens nor discourage the everyday courtesy wave.

We also respectfully disagree with our colleague that this will diminish the liability of the signaled driver. We do agree that no motorist may reasonably rely upon a simple hand gesture by another motorist as a guarantee that "all is clear." However, when a motorist engages in such a thorough inspection of the traffic situation, a motorist should be able to reasonably rely on that driver's assessment to some extent. We should not let someone escape liability completely when they have represented to another driver

15

that they have done a thorough inspection of oncoming traffic and determined it is safe to proceed. Key himself said at trial that he would not put another driver in danger by instructing him into the intersection if there was oncoming traffic, Tr. p. 217, and we should not expect that this would be a common practice of other motorists. But, if a collision occurs, the individual whose actions initiated the chain of events that led to it should not be devoid of all responsibility.

After analyzing the three factors articulated in *Webb*, we hold that Key, as the signaled driver, owed a duty to the injured Hamilton as a matter of law. Once duty was established, the jury appropriately determined fault under our comparative negligence statute assigning fault as 5% to Hamilton, 45% to Key, and 50% to non-party Owens.

## II. Proximate Cause

The Defendants also contend that Hamilton failed to show that Key's conduct was the proximate cause of his injuries. This Court has recently addressed proximate cause, stating:

> [w]hether an act is the proximate cause of an injury depends upon whether the injury was a natural and probable consequence of the negligent act which, in light of the attending circumstances, could have been reasonably foreseen or anticipated. The negligent act must set in motion the chain of circumstances which contribute to or cause the resulting injury.

*Humphery v. Duke Energy Ind., Inc.*, 916 N.E.2d 287, 292 (Ind. Ct. App. 2009).

The Defendants argue that Key cannot be the proximate cause of the accident because Hamilton's injuries were not foreseeable or a natural consequence of Key's actions and because Key's actions did not set the events into motion. We find this argument unpersuasive.

16

While foreseeability is part of the duty analysis, it is also part of the proximate cause analysis, too. Put differently, although duty and its element of foreseeability is a question of law decided by the court, the negligence inquiry does not end there; the issue of proximate cause and its element of foreseeability, along with the resulting recovery of each party, are questions left in the hands of the jury.

The jury did not err in finding that Hamilton's injuries were foreseeable as a result of Key's actions; Key admitted at trial that signaling a driver that all is clear when there is other traffic in the intersection would place an individual in a position of danger. Tr. p. 217. Also, although Owens admittedly did not pull his truck out any differently than he would have had Key not signaled to him, Appellant's Br. p. 30, he also admitted that he would not have pulled out into the intersection at all had Key not signaled to him. Appellant's App. p. 100. Therefore, Hamilton's injuries were both foreseeable and set into motion by Key's action of waving Owens through the intersection, making Key's actions a proximate cause of Hamilton's injuries.

After determining proximate cause, the jury then apportioned fault between the parties in the manner that it felt was appropriate based on the circumstances surrounding the situation. The jury did not err in finding proximate cause and apportioning fault.

### III. Jury Instructions

The Defendants finally argue that the trial court erred in instructing the jury on assumption of duty. The trial court gave the following instruction over the Defendants' objection:

<u>ASSUMPTION OF DUTY</u>

17

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

      (a) his failure to exercise reason able care increases the risk of such harm, or

      (b) he has undertaken to perform a duty owed by the other to the third person, or

      (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[8]

Appellants' App. p. 140.

The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Centennial Mortg., Inc. v. Blumenfeld*, 745 N.E.2d 268, 278 (Ind. Ct. App. 2001). Instructing the jury lies within the sole discretion of the trial court, and we review the trial court's decision only for abuse of that discretion. *Hagerman Constr., Inc. v. Copeland*, 697 N.E.2d 948, 959 (Ind. Ct. App. 1998), *trans. denied*. Where the verdict would not have differed had the jury been properly instructed, any error in the giving on the instruction is harmless. *Centennial Mortg.*, 745 N.E.2d at 278.

Even if we were to find that this instruction was a misstatement of the law, we find that this error was harmless. "Even when a jury is given an incorrect instruction on the law, we will not reverse the judgment unless the party seeking a new trial shows 'a

---

[8] This instruction sets forth verbatim Restatement (Second) of Torts § 324A. Owens argues that this Restatement section does not apply to our case because there were no services rendered. However, we do not need to resolve this issue because we find independently of this Restatement that a signaling driver may assume a duty of care to a third-party motorist.

reasonable probability that substantial rights of the complaining party have been adversely affected.'" *Penn Harris Madison Sch. Corp. v. Howard*, 861 N.E.2d 1190, 1195 (Ind. 2007) (quoting *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 944 (Ind. 2001)). In this case, the Defendants have not shown that there is a reasonable probability that their substantial rights have been adversely affected. In addition to assumption of duty, the jury was properly instructed on negligence,[9] proximate cause,[10] proper lookout,[11] and the duties a driver has while operating a vehicle.[12] Taken as a whole, these instructions gave the jury proper guidance on determining the presence or absence of negligence in this case.

---

[9] "Negligence is the failure to use reasonable care.

A person may be negligent by acting or by failing to act. A person is negligent if he or she does something a reasonably careful person would not do in the same situation or fails to do something a reasonably careful person would do in the same situation.

In order to prevail on a claim of negligence, a plaintiff is required to prove three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach.

When found to exist, the duty is to exercise reasonable care under the circumstances, and this duty never changes; however, the standard of conduct required to measure up to that duty varies depending upon the particular circumstances." Appellee's App. p. 1.

[10] "An act or omission is a proximate cause of an injury if the injury is a natural and probable consequence of the act or omission." Tr. p. 558.

[11] "Every driver has a duty to maintain a proper lookout. A driver has an obligation to see or hear that which should be seen or heard through the exercise of reasonable care. A person is negligent if he/she fails to maintain a proper lookout." Appellee's App. p. 2.

[12] "Every driver of a motor vehicle has a duty to exercise the care an ordinarily prudent person would use, under the same or similar circumstances. The failure to use such care is negligence." Appellee's App. p. 3.

19

Affirmed.

BAKER, J., concurs.

MATHIAS, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JACOB KEY, TED J. BROWN<br>and SALLY A. BROWN,<br>  Appellants, | )<br>)<br>)<br>) | |
| vs. | )<br>) | No. 48A02-1007-CT-812 |
| DEWAYNE HAMILTON, | )<br>) | |
|   Appellee. | ) | |

**MATHIAS, Judge, dissenting**

I respectfully dissent.

At issue in this case is whether a motorist who halts his own lane of traffic and signals to another driver to proceed across his lane can be liable to a third party who collides with the signaled driver in an adjacent lane beyond. This is a question of first impression in Indiana.[13] While the majority and I analyze these facts under the rubric set forth in Webb v. Jarvis, 575 N.E.2d 992 (Ind. 1991), the majority concludes that, under

---

[13]  I agree with the majority that Claxton v. Hutton, 615 N.E.2d 471 (Ind. Ct. App. 1993), is factually distinguishable from the present case in that Claxton dealt with the question of whether the signaling driver assumed a duty to the signaled driver, whereas here the question is whether the signaling driver assumed a duty to the third party who collided with the signaled driver. I would also note that the Claxton court did not engage in an analysis of the Webb v. Jarvis factors.

21

the circumstances of this case, Key assumed a duty to Hamilton by signaling Owens to proceed.  I disagree.

**The Legal Effect of Undisputed Facts is a Pure Question of Law**

I first note that, here, we review a motor vehicle accident case in which, at the time of Hamilton's motion for summary judgment, there were no genuine issues of material fact with regard Key's behavior prior to the accident.  And where there is no genuine issue of material fact, summary judgment is an appropriate stage of trial to determine duty, or its absence, as a matter of law.  See Hammock v. Red Gold, Inc., 784 N.E.2d 495, 498 (Ind. Ct. App. 2003) (the existence of a legal duty is a pure question of law and only becomes a mixed question of law and fact where factual questions are present); see also Masick v. McColly Realtors, Inc., 858 N.E.2d 682, 692 (Ind. Ct. App. 2006) (where there is no genuine issue of material fact, assumption of a duty may be determined as a matter of law).  Because there were no genuine issues of material fact the trial court should have found no duty on the part of Key as a matter of law under Webb v. Jarvis and should have granted Key's motion for summary judgment.  The same avenue was open to the trial court at the close of Hamilton's case-in-chief on Key's motion for judgment on the evidence, and at the close of all evidence, on Key's motion for directed verdict.

**Webb v. Jarvis**

For more than twenty years, the touchstone of duty analysis in negligence cases in Indiana has been Webb v. Jarvis.[14] In that case, Jarvis was shot by Dr. Webb's patient, Neal, who at the time was allegedly under the influence of anabolic steroids that Webb had prescribed for him. Jarvis claimed that Webb's negligence in the over-prescription of that medication for Neal proximately caused uncontrollable rage in Neal, which ended in Neal's shooting of Jarvis. On appeal from the trial court's denial of Webb's motion for summary judgment, this court held that Webb owed a duty to Jarvis to refrain from negligently overprescribing steroids to his patient Neal, that Webb need not have had actual knowledge that Jarvis was a potential victim because of the risk of physical injury to Jarvis, and that Jarvis was a foreseeable plaintiff. Webb v. Jarvis, 553 N.E.2d 151, 155-56 (Ind. Ct. App. 1990), trans. granted.

On transfer, our supreme court reaffirmed that the underlying existence of a duty is a question of law. Webb, 575 N.E.2d at 995. Proceeding to the facts before it, the court held that, in order for the court to impose a duty at common law, three factors must

---

[14] The three-part Webb test has been criticized by former Indiana Supreme Court Justice Boehm, who advocated against the concept of "duty" as an independent element of a negligence action:

> [T]he traditional formula of duty, breach, causation and harm is in most cases better understood as proceeding on the assumption that all of us are obliged to take reasonable steps to avoid harm to others in the activities we undertake and can control. *The issue of "duty" then resolves itself to an inquiry into whether there is some reason in policy why the law should nevertheless preclude recovery.* That reason may arise from, inter alia, the nature of the plaintiff, the nature of the defendant, the relationship between them, the nature of the activities giving rise to the claim, or the nature of the harm alleged.

Honorable Theodore R. Boehm, A Tangled Webb-Reexamining the Role of Duty in Indiana Negligence Actions, 37 Ind. L. Rev. 1, 19 (2003) (emphasis added). I think many of Justice Boehm's points are well taken. Nevertheless, our supreme court has not adopted Justice Boehm's view, and I therefore proceed under the traditional Webb analysis.

be balanced: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. Id. As did our supreme court in Webb, I believe the question of duty in the case before us is best resolved by considering each of these three factors in turn.

1. The Relationship Between the Parties.

Hamilton, Key, and Owens were all motorists on an Indiana highway. Specifically, Key was stopped at an intersection, but more specifically, he was stopped by stalled traffic in the lane ahead of him. The collision at issue occurred when Owens passed beyond Key's lane of traffic and entered the lane of traffic Hamilton was travelling in after being motioned through by Key. Clearly, there was no privity between Key and Hamilton. However, as the Webb court noted, the lack of privity between Key and Hamilton does not mandate a conclusion that there was no duty on the part of Key running in favor of Hamilton. See id. at 995-96 (noting that privity between the parties is no longer required in order to impose a duty of reasonable care).

Our supreme court's ensuing discussion of Indiana's common law concerning duty to "unidentified and unknown" third parties was framed by the context of the duty owed by a professional to third parties. See id. at 996 (citing Walker v. Lawson, 514 N.E.2d 629 (Ind. Ct. App. 1987), rev'd on other grounds, 526 N.E.2d 968 (Ind. 1988); Ackerman v. Schwartz, 733 F. Supp. 1231 (N.D. Ind. 1989)). The Webb court concluded by referring to a case holding that a land surveyor owed no duty to a subsequent purchaser of the real estate surveyed. Id. (citing Essex v. Ryan, 446 N.E.2d 368 (Ind. Ct. App. 1983)). Noting that Jarvis had not alleged that he knew of or relied upon Webb's professional

24

services to Neal, the court held that the relationship needed to impose a duty on Webb was lacking. Id.

Similarly, in the case before us, Hamilton alleged no special relationship with Key or any reliance on Key. Instead, he simply alleged that Key "waved out John Owens to make his left hand turn and proceed north," and that "[a]s a direct and proximate result of the negligence of [Key]," Hamilton was injured. Appellant's App. pp. 18-19. Comparing these allegations to the Webb court's discussion of duties to "unidentified and unknown" third parties, I believe it is apparent that Hamilton is precisely the type of "unidentified and unknown" third party the Webb court was concerned about.

It is clear from the record that Key never saw Hamilton, even though he looked for drivers like him before motioning Owens through the intersection. And there is no indication that Hamilton ever saw Key and relied upon his conduct. Had Key seen and acknowledged Hamilton, and had Hamilton seen Key directing traffic, one might reasonably allege a relationship upon which a new duty could be premised, and it is doubtful that the accident would have occurred. But because there was no recognition by either driver of the other, I believe that Hamilton's claim of duty is brought up short by this lack of recognition and subsequent lack of any relationship.

Indiana statutes are also instructive regarding the relationship between a driver on the highway and a person signaling such a driver. Drivers are required to obey only the

signals of certain, authorized persons, such as a police officer directing traffic[15] and a flagman in a construction zone.[16] There is no statutory duty to obey any other driver's traffic signals. I would argue that these statutes presuppose an underlying relationship between the drivers based upon the driver's and signaler's recognition of each other.

In sum, the non-existent relationship between Hamilton and Key does not support finding a duty on the part of Key in favor of Hamilton.

2. Foreseeability of Harm to the Injured Person

"The law requires every person to exercise due care to avoid foreseeable injury to others." Stapinski v. Walsh Construction Co., 383 N.E.2d 473, 476 (Ind. Ct. App. 1978), *vacated on other grounds,* 272 Ind. 6, 395 N.E.2d 1251 (1979); see also Lake Shore & Mich. S. Ry. Co. v. Brown, 41 Ind. App. 435, 84 N.E. 25 (1908). "'The duty of reasonable care is not, of course, owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by the breach of the duty.'" Webb, 575 N.E.2d at 997 (quoting Thiele v. Faygo Beverage, Inc., 489 N.E.2d 562, 574 n.4 (Ind. Ct. App. 1986)).

As famously expressed by Justice Cardozo, then chief judge of the New York State Court of Appeals, "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of

---

[15] See Ind. Code § 9-21-8-1 (2004) ("It is unlawful for a person to knowingly fail to comply with a lawful order or direction of a law enforcement officer invested by law with authority to direct, control, or regulate traffic.").

[16] See Ind. Code § 9-21-8-56 (2007) (making it a criminal offense to "recklessly fail[] to obey a traffic control device or flagman . . . in the immediate vicinity of a highway work zone when workers are present[.]").

apprehension." Palsgraf v. Long Island R. Co., 162 N.E. 99, 100 (1928)). Indiana follows this "foreseeability-relationship" formulation of the question of whether the defendant in a negligence case owed a duty of care to the plaintiff. Thiele, 489 N.E.2d at 574 n.4; see also Webb, 575 N.E.2d at 997 (in analyzing the foreseeability component of duty, a court should focus on whether the person actually harmed was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable).

As explained in Webb:

Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. PROSSER & KEETON ON TORTS, § 53 (5th ed. 1984). Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct. HARPER, JAMES & GRAY, The Law of Torts Vol. 3 § 18.2 (2d ed. 1986).

575 N.E.2d at 997.

The risk of a collision at an intersection is, in a sense, always foreseeable. But there is no indication here that the collision was more foreseeable than in any other circumstance. In fact, to say that it was foreseeable that a collision would occur is to effectively say that Key should have foreseen that Owens would pull his vehicle into Hamilton's path. With this I disagree.

As the majority correctly notes, the relevant traffic statutes require a driver such as Owens to stop at an intersection with a through highway and yield to oncoming traffic. See Ind. Code § 9-21-8-31 (2004); Ind. Code § 9-21-8-32 (2004). Thus, our General

27

Assembly has seen fit to place the duty on a driver such as Owens to yield the right-of-way to oncoming drivers. And, as noted above, the legislature has required drivers to obey the signals of certain authorized persons, such as a police officer directing traffic and a flagman in a construction zone. However, there is nothing in the relevant Indiana Code provisions that suggests that a driver may delegate her or his statutory duty to, or share his or her statutory duty with, another driver.

The majority acknowledges that the relevant statutes impose a *non-delegable* duty upon drivers such as Owens to yield the right-of-way to oncoming drivers on the through highway.[17] Given this non-delegable duty on the part of Owens, I believe that the only foreseeable consequence of Key's act of signaling to Owens was that Key would not hit Owens and that Owens could therefore safely proceed through Owens's lane of traffic. Indeed, it has been held that such a hand signal indicates only that the signaling motorist is yielding his or her own right-of-way, i.e. "I won't hit you." Dawson v. Griffin, 816 P.2d 374, 379 (Kan. 1991); see also Van Jura, 191 N.E.2d at 538 (noting that signaling motorist's hand signal was an "act . . . of courtesy"). Simply said, it is unreasonable for any motorist to rely upon a signal by another motorist as a guarantee that it is safe to

---

[17] The majority nevertheless insists that the pertinent question is not whether Owens had a duty to yield at the intersection, but whether Key assumed a duty to Hamilton through his actions. I respectfully disagree with the premise underlying the question. If Owens had a non-delegable duty to yield at the intersection and to not proceed unless it was clear, I believe it is difficult to say that Key's signal to Owens to proceed through the intersection can be the basis of imposing an additional duty on Key. To me, it is axiomatic that a duty that cannot be delegated also cannot be transferred. I believe that the majority's rationale that Key assumed a duty to Hamilton effectively transfers some of Owens's non-delegable duty from Owen to Key.

proceed through an intersection, allowing the proceeding motorist to ignore her or his statutory duty to yield to oncoming traffic.

For all of these reasons, I do not think it was foreseeable to Key that Owens would proceed into Hamilton's lane of traffic without comporting with his own non-delegable duty to assure that there was no oncoming traffic. To say otherwise is to say that motorists must foresee that other drivers will be derelict in the observance of their duties, and improperly transfers some of Owens's non-delegable duty onto Key. In short, the foreseeability prong of the Webb analysis also disfavors finding a duty on the part of Key vis-à-vis Hamilton.

3. Public Policy Concerns

Perhaps most importantly, public policy concerns weigh heavily in favor of a finding of no duty on the part of signaling drivers such as Key.[18] The majority acknowledges, but minimizes, what I consider to be extraordinarily compelling public policy concerns. The Webb court aptly quoted Prosser and Keaton in this regard: "Duty is . . . an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." Webb, 575 N.E.2d at 997 (citing Prosser and Keaton at § 53). Here, various public policy considerations further support the conclusion that Key owed no duty to Hamilton.

First among these considerations is the behavior of drivers. Indiana law should seek to foster courteous behavior by motorists. To hold that a signaling driver who yields

---

[18] See Justice Boehm's discussion of the core importance of public policy considerations in determining whether to impose liability for parties' conduct. Boehm, supra, at 19.

his or her own right-of-way might be liable to a third party who collides with the signaled motorist will discourage such courteous behavior. And beyond such discouragement, such a holding might well foster an increase in the already troublesome level of "road rage" frequently acted out in traffic jams. As the California Court of Appeals wrote in Gilmer v. Ellington:

> [T]here would be reactive negative consequences to the community by imposing a duty on the yielding driver; most notably, a relaxed vigilance by left-turning drivers who may rely unthinkingly on ambiguous signals from other drivers, or at least claim to have done so. At a time when "road rage" is unhappily common, the added duty may further erode what infrequent civility is left on the roads. If the common courtesy of yielding the right-of-way results in lawsuits, we can expect further egocentric driving.

70 Cal. Rptr. 3d 893, 900 (Cal. Ct. App. 2008).

Hoosiers can be rightfully proud that the courtesy of yielding to other drivers is still rather commonplace in Indiana. We should do nothing that would cause such courtesy to diminish for fear of resultant liability. In fact, I think that ordinary Hoosiers would be shocked to learn that they might be held liable to an unknown driver for the act of yielding their own right-of-way to another driver at an intersection.

Admittedly, Key did more than simply wave Owens through in front of him, in that he checked the adjacent lane for oncoming traffic before doing so. Key's behavior in this regard was laudatory. Indeed, waving another motorist through an intersection *without* looking for oncoming traffic seems to me to be behavior far more egregious than at least attempting to look for oncoming traffic before signaling. Yet the majority opinion effectively penalizes drivers such as Key, who at least try to discern whether there is any oncoming traffic, by exposing them to liability for any resulting collision

30

between the signaled driver and a third party. On the other hand, the majority would insulate from liability a driver who casually waves another motorist through an intersection without looking for oncoming traffic. This is contrary to sound public policy.

I am further concerned that imposing a duty on signaling drivers such as Key effectively diminishes the responsibility of signaled drivers such as Owens. As noted above, I believe that no motorist may reasonably rely upon a hand signal by another motorist as a guarantee that "all is clear." Hoosier motorists' daily experiences confirm this. As a corollary, I think it is reasonable for one motorist to signal to another motorist to indicate that the signaling driver is yielding his or her right-of-way.[19] But it is unreasonable for any motorist to rely upon such a signal by another motorist as a guarantee that it is safe to proceed through an intersection, and it is doubly irresponsible for an unknown, third-party driver to rely upon another unknown, third-party driver who allegedly signals yet another unknown, third-party driver all is clear, by word or by conduct.

4. Analysis of the Webb Factors

In short, none of the three factors of the Webb analysis favors a finding of a duty on the part of a driver such as Key to a third party such as Hamilton. Key and Hamilton had no relationship that would support the finding of a duty, Hamilton was not a

_____

[19] In the terms of Justice Boehm's article cited above, even if I were to conclude that Key acted unreasonably, I still think that the overwhelming public policy concerns weigh heavily against imposing liability on Key under the facts and circumstances of this case, and under similar circumstances, i.e., where the signaled driver collides with a third party. See Boehm, supra, at 15.

foreseeable plaintiff injured by a foreseeable risk, and public policy concerns weigh against the finding of a duty on the part of drivers such as Key.

If this court were to adopt the position of no duty as a matter of law, Indiana would be in good company. As detailed in the majority opinion, courts in several other states have held that a signaling driver owes no duty to a third-party driver as a matter of law. The cases from these courts—notably including those from our neighbors in Ohio and Michigan—hold, as would I, that a signaling driver owes no duty to a third-party motorist because a signaling driver does not and should not share in the duty of the signaled driver to operate his vehicle in a safe manner and in accordance with all applicable law. See Gilmer, 70 Cal. Rptr. 3d at 899-900; Duval v. Mears, 602 N.E.2d 265, 274 (Ohio Ct. App. 1991); Peka v. Boose, 431 N.W.2d 399, 401 (Mich. Ct. App. 1988); Arnold v. Chupp, 92 S.E.2d 239, 243 (Ga. Ct. App. 1956).

**Conclusion**

Based upon my consideration of the Webb factors, I would hold that, as a matter of law, a driver who signals to another driver to proceed through an intersection owes no duty to a third party with whom the signaled driver collides. Applying this holding to the designated facts of the present case at the time of Key's motion for summary judgment, I believe that Key owed no duty to Hamilton as a matter of law. It was Owens's statutory and common law duty to ensure that the intersection was clear before entering; and statute, public policy and common sense all support the conclusion that this duty is one that cannot be delegated to another, well-meaning and courteous motorist.

32

Because I am of the opinion that Key did not owe a duty to Hamilton, I would reverse, holding that the trial court should have granted summary judgment in favor of the Defendant Key. I believe that the evidence adduced at trial even more strongly confirms Key's lack of duty as a matter of law and that either Key's motion for judgment on the evidence or his motion for directed verdict should have been granted, as well. At every procedural step in this case, duty was a matter of law for determination by the court, and to be resolved in Key's favor under <u>Webb v. Jarvis</u>, rather than a question of fact for the jury.