

**FILED**

Mar 28 2018, 5:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| | |
|---|---|
| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
| Stacy R. Uliana | Curtis T. Hill, Jr. |
| Bargersville, Indiana | Attorney General of Indiana |
| | |
| | Larry D. Allen |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christapher Batchelor, | March 28, 2018 |
| *Appellant-Defendant,* | Court of Appeals Case No. 11A01-1707-CR-1574 |
| v. | Appeal from the Clay Circuit Court |
| State of Indiana, | The Honorable Joseph Trout, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 11C01-1512-F6-890 |

**Barnes, Judge.**

## Case Summary

[1]     Christapher Batchelor appeals his convictions for Level 5 felony battery on a law enforcement officer, Level 6 felony resisting law enforcement, and Class A

misdemeanor resisting law enforcement. We affirm in part, reverse in part, and remand.

## Issue

The sole issue is whether the trial court committed fundamental error by giving the jury an instruction regarding the definition of "flee" for purposes of resisting law enforcement.

## Facts

At about 8:30 p.m. on December 14, 2015, Clay County Deputy Sheriff James Switzer was driving his marked cruiser and saw that Batchelor was driving his truck without wearing a seatbelt. As Deputy Switzer pulled behind Batchelor at a four-way stop in Brazil, he saw Batchelor reach over and put on his seat belt, then signal and turn left. Deputy Switzer activated his lights to initiate a traffic stop, but Batchelor continued driving for one minute and thirty-eight seconds; Deputy Switzer did not immediately activate his siren but did so later at some point.[1] There was a well-lighted gas station at the intersection where Deputy Switzer first activated his lights. Deputy Switzer then followed Batchelor through residential areas, passing a number of street lights and side streets. Batchelor encountered two stop signs while being followed by Deputy Switzer, at which he made complete stops. Batchelor was traveling approximately thirty-five miles per hour in a twenty-five miles per hour zone; Deputy Switzer

---

[1] There is a dash cam video of the incident from Deputy Switzer's cruiser, but it lacks audio.

described Batchelor's speed as not excessive and "more or less appropriate . . . ." Tr. Vol. III p. 7. Finally, after Deputy Switzer had activated his LED spotlight and shined it on Batchelor's mirrors, Batchelor pulled over into a gravel parking area on the side of the road.

[4] Batchelor started to get out of his truck as Deputy Switzer got out of his cruiser. Deputy Switzer ordered Batchelor to get on the ground and he complied. Deputy Switzer intended to arrest Batchelor for resisting law enforcement. However, Batchelor resisted Deputy Switzer's attempt to handcuff him. Two other officers then arrived on the scene as backup. Batchelor continued struggling with Deputy Switzer and the other two officers. During the struggle, Batchelor kicked Deputy Switzer in the chest, throwing him into Batchelor's truck. Batchelor could not be subdued and arrested until two more backup officers arrived on the scene. Because of this altercation, Deputy Switzer injured his ankle and had to miss three months of work recovering. One of the back-up officers jammed his finger during the altercation, and another sustained a black eye.

[5] The State charged Batchelor with Level 6 felony resisting law enforcement for fleeing from Deputy Switzer, one count of Level 6 felony battery on a police officer for kicking and injuring Deputy Switzer, and two counts of Class A misdemeanor resisting law enforcement with respect to Batchelor's resisting arrest by two of the back-up officers. The State later combined the two Class A misdemeanor charges into one charge. Batchelor did not testify or present evidence during his jury trial. During closing statements, Batchelor's attorney

argued that he did not flee Deputy Switzer in light of there not being a high-speed chase, the fact that it was nighttime and raining, and that the gravel parking area where he stopped was "a good and safe place to pull over . . . ." *Id.* at 109.[2]

[6] The State requested and the trial court gave the following instruction:

> A person who fails to stop his vehicle promptly "flees" law enforcement when the person attempts to escape from law enforcement or attempts to unnecessarily prolong the time before the person must stop. It is an issue in this case whether the Defendant attempted to escape or unnecessarily prolonged the time before stopping. The burden is on the State to prove beyond a reasonable doubt that:
>
> (1)    The defendant acted with the intent to escape, *or*
>
> (2)    A reasonable driver in the Defendant's position would not have felt unsafe under the facts of this case to come to an immediate halt, *or*
>
> (3)    That if a reasonable driver in the Defendant's position would have felt unsafe to come to an immediate halt, the driver would have come to a halt sooner.

---

[2] Counsel did not specify the "safety" issue here; rather than a concern for Batchelor's personal safety, it could have been a reference to his not having to pull over on the side of the street and possibly obstruct traffic.

App. Vol. III p. 71.  Batchelor did not object to this instruction.  The jury found Batchelor guilty as charged on all counts, and the trial court entered judgments of conviction and sentenced him accordingly.  Batchelor now appeals.

## Analysis

[7]     Batchelor contends the trial court erroneously instructed the jury regarding the "fleeing" element of resisting law enforcement.[3]  We review a trial court's decision to give or refuse a jury instruction for an abuse of discretion.  *Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015).  We must consider:  "'(1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given.'"  *Id.* (quoting *Guyton v. State*, 771 N.E.2d 1141, 1144 (Ind. 2002)).  Before a conviction may be reversed based on instructional error, the defendant must affirmatively show that the error prejudiced his or her substantial rights.  *Vaughn v. State*, 13 N.E.3d 873, 886 (Ind. Ct. App. 2014), *trans. denied*.

[8]     Because Batchelor did not object to the instruction at issue, his claim is waived, and he must demonstrate the existence of fundamental error before we may reverse.  *See Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016).  Fundamental error is that which constitutes a substantial blatant violation of basic principles

---

[3] Although Batchelor challenges all three of his convictions on appeal, he does not explain how this alleged instructional error would impact his convictions for Level 5 felony battery on a police officer or Class A misdemeanor resisting law enforcement.

resulting in a denial of a defendant's fundamental due process rights. *Id.* The fundamental error exception to the general rule requiring a contemporaneous objection is narrow, applicable only in egregious circumstances that made a fair trial impossible. *Id.*

[9] Indiana Code Section 35-44.1-3-1 provides that it is a Level 6 felony resisting law enforcement for a person to use a vehicle to "knowingly or intentionally . . . flee[] from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop . . . ." The key issue in this case with respect to the Level 6 felony resisting charge was whether Batchelor "knowingly or intentionally" fled from Deputy Switzer when he waited one minute and thirty-eight seconds to pull over after Deputy Switzer first activated his emergency lights. At trial, Batchelor emphasized the lack of any evidence that he drove unsafely or at an excessive rate of speed before pulling over, while the State emphasized the absence of any apparent safety reason for Batchelor not to have pulled over sooner. Batchelor did not testify at trial.

[10] There is no statutory definition of the word "flee" in the Indiana Code. In *Cowans v. State*, 53 N.E.3d 540 (Ind. Ct. App. 2016), this court attempted to provide some guidance on that issue, in light of the fact that drivers may sometimes delay pulling over for law enforcement out of concern for their personal safety. In *Cowans*, the defendant did not pull over for six minutes, or three miles, after an officer first activated his lights. The defendant did not

speed but also passed by several well-lit areas before stopping. The defendant, a black man, testified at trial that he did not stop immediately because of news reports he had seen of police officers having violent encounters with unarmed black men during traffic stops and because of news reports advising citizens to drive to a safe place before pulling over.

[11] The defendant was convicted of resisting law enforcement by fleeing in a vehicle. On appeal, the defendant sought reversal because the trial court denied his request to instruct the jury on the defense of "mistake of fact"; he claimed his belief that he could continue driving until he found what he believed to be a safe place stop was a "mistake of fact." This court held that the trial court properly refused that instruction, agreeing with the State that this purported defense would at best be a "mistake of law," not a "mistake of fact." *Cowans*, 53 N.E.3d at 543. Thus, Cowans's conviction was affirmed.

[12] In dicta, this court went on to "address some of the underlying issues of this case, which are likely to reoccur for other citizens of Indiana. Cowans is far from alone in his belief that motorists are allowed to drive to a safe location after being ordered to stop by flashing police lights." *Id.* The *Cowans* panel found no express support for this belief in the Indiana Code. It also noted that in *Woodward v. State*, 770 N.E.2d 897 (Ind. Ct. App. 2002), *trans. denied*, this court held there was sufficient evidence to sustain a conviction for resisting law enforcement by fleeing where the defendant claimed he was looking for a well-lit place to pull over but there was evidence he passed several well-lit areas before pulling over. The *Woodward* opinion stated, "we cannot say that a

person who has admitted to knowing that a police officer wishes to effectuate a traffic stop can, without adequate justification, choose the location of the stop." *Woodward*, 770 N.E.2d at 902.

[13] Focusing on the phrase "without adequate justification" in the *Woodward* opinion, the *Cowans* panel stated "that a person with an 'adequate justification' might have some discretion to choose the location of a stop. Clearly, it cannot be the case that a driver must slam his brakes and come to an immediate stop or else face felony prosecution." *Cowans*, 53 N.E.3d at 544. The panel noted that in a case involving resisting law enforcement by running away on foot, flight "'in this context should be understood to mean a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there.'" *Id.* at 545 (quoting *Wellman v. State*, 703 N.E.2d 1061, 1063 (Ind. Ct. App. 1998)). It also reiterated our supreme court's general definition of flight as evidence of consciousness of guilt, which is "'a conscious, overt act, known and accepted to be a response to a consciousness of guilt in a person and a means of preventing apprehension and punishment.'" *Id.* (quoting *Hoskins v. State*, 441 N.E.2d 419, 427 (Ind. 1982)).

[14] The opinion also recounted a Black's definition of "flee from justice" as meaning, "'Removing one's self from or secreting one's self within jurisdiction wherein offense was committed to avoid arrest; or concealing one's self therein, with intent, in either case, to avoid arrest, detention, or punishment for some criminal offense.'" *Id.* (quoting BLACK'S LAW DICTIONARY 639 (6th ed. 1990)).

We observe that a more recent edition of Black's defines "flee" as, "To run away; to hasten off . . . . To run away or escape from danger, pursuit, or unpleasantness; to try to evade a problem . . . . To vanish; to cease to be visible . . . . To abandon or forsake . . . ." BLACK'S LAW DICTIONARY 756 (10th ed. 2014).

[15] Based on these varying definitions of "flee" or "flight," the *Cowans* opinion stated, "a person who drives to a location of greater safety for her or the officer, intending only to be in a location of greater safety, is not 'fleeing' from the police." *Cowans*, 53 N.E.3d at 545. Ultimately, the opinion stated,

> We believe that a defendant charged with resisting law enforcement by fleeing by vehicle would be entitled, if he so requested, to have a jury instruction regarding the definition of the word "flee." This word is an element of the crime that the State is required to prove beyond a reasonable doubt. The definition would explain that a person who is attempting to escape police, or attempting to unnecessarily prolong the time before he is stopped, would be fleeing. The definition should also explain, however, that if a reasonable driver in the defendant's position would have felt unsafe to come to an immediate halt, and if the defendant took reasonable steps to increase the safety of the stop without unnecessarily prolonging the process, then the defendant was not fleeing. In short, the jury instruction would put the question of whether the driver had an "adequate justification" squarely before the factfinder.

*Id.* at 545-46.

[16] The challenged jury instruction in this case largely paralleled this language from *Cowans*. However, the first thing to note is that *Cowans* expressly predicated the

giving of such an instruction upon the defendant's requesting it; here, the State requested it. On that basis alone, it was erroneous for the trial court to give the instruction where Batchelor did not request it.

[17] The question, then, is whether the instruction was fundamentally erroneous. We conclude that it was in at least one clear respect. In *Hall v. State*, 937 N.E.2d 911 (Ind. Ct. App. 2010), we addressed whether it was fundamentally erroneous to instruct the jury in a habitual traffic violator ("HTV") case that the State had to prove the defendant "knew or *should have known* that his driving privileges were suspended." We noted that this statement of the mens rea was inaccurate because the HTV statute required proof that the defendant knew of the suspension, not merely that he or she should have known. *Hall*, 937 N.E.2d at 912-13 (citing I.C. § 9-30-10-16(a)(1)). We also held that, although the defendant did not object to the erroneous instruction, it was fundamental error because it allowed the jury to convict based on a lesser mens rea than required by the statute. *Id.* at 913. We recognized that "error in an instruction on mens rea does not rise to the level of fundamental error where either the instructions as a whole sufficiently inform the jury of the required mens rea or the defendant's mens rea was not a central issue at trial." *Id.* However, the trial court's instructions repeating the charging information, which included the correct mens rea, and defining the terms "knowingly" and "intentionally" were insufficient to cure the erroneous instruction. *Id.* Moreover, the defendant's mens rea—whether he knew his license was suspended—was the central issue at trial. *Id.*

[18] Here, the resisting law enforcement statute clearly requires proof that the defendant "knowingly or intentionally" fled. *See* I.C. § 35-44.1-3-1. The challenged instruction, however, allowed the jury to convict Batchelor if the State proved that:

> (1) The defendant acted with the intent to escape, *or*
>
> (2) A reasonable driver in the Defendant's position would not have felt unsafe under the facts of this case to come to an immediate halt, *or*
>
> (3) That if a reasonable driver in the Defendant's position would have felt unsafe to come to an immediate halt, the driver would have come to a halt sooner.

App. Vol. III p. 71. Although the first part of the language above correctly states the mens rea for resisting law enforcement, parts two and three alternatively allowed a conviction based on what a "reasonable driver" would have done in Batchelor's situation. In other words, parts two and three allowed a conviction if the State proved, essentially, that Batchelor was negligent. Negligence occurs when an actor's conduct falls below that of a reasonable person under like or similar circumstances. *Key v. Hamilton*, 963 N.E.2d 573, 579 (Ind. Ct. App. 2012), *trans. denied*. Negligence is not the correct mens rea for resisting law enforcement. This was the same mens rea problem as in *Hall*.

[19] We also do not believe the trial court's general instructions regarding the correct intentional or knowing mens rea for resisting law enforcement were sufficient to correct the plain error in the instruction that purported to give very detailed

guidance on the definition of "fleeing." The prosecutor's argument to the jury also discussed and relied heavily upon this erroneous language. And, the central issue at trial with respect to the resisting law enforcement by fleeing charge was whether Batchelor knowingly or intentionally did so. Although there is no question Batchelor knew of Deputy Switzer's wanting to pull him over, there also is no evidence that there was a "high-speed chase" here. It was for the jury to decide whether such a chase that lasted approximately a minute-and-a-half was a knowing or intentional fleeing by Batchelor, not whether it was something a "reasonable" person would have done. We conclude that this misstatement of the mens rea for a resisting law enforcement conviction was sufficient by itself to make the instruction fundamentally erroneous, mandating reversal of Batchelor's conviction for Level 6 felony resisting law enforcement by fleeing in a vehicle.

[20] There are other problems with the instruction; we need not conclusively determine whether these are fundamental errors, but we point out these errors nonetheless. First, the instruction comes dangerously close to creating an unconstitutional mandatory presumption. A jury instruction that tells the jury that it must infer a presumed fact if the State proves certain predicate facts is a mandatory presumption instruction that relieves the State of its burden of proof in proving all the elements of a crime, in violation of the Due Process Clause of the United States Constitution. *See Brown v. State*, 691 N.E.2d 438, 444 (Ind. 1998) (citing *Francis v. Franklin*, 471 U.S. 307, 314-15, 105 S. Ct. 1965, 1971-72 (1985)).

[21] Although the instruction here did not expressly tell the jury that it "must" or "should" presume that Batchelor was fleeing if the State proved certain predicate facts, the use of such words is not always necessary to make an instruction an impermissible mandatory presumption instruction. *See Higgins v. State*, 783 N.E.2d 1180, 1185-86 (Ind. Ct. App. 2003), *trans. denied*. Here, the instruction states conclusively that a person "flees . . . when the person attempts to escape from law enforcement or attempts to unnecessarily prolong the time before the person must stop"; it does not tell the jury that it "may" find fleeing in such a case, which would only indicate an acceptable permissive inference. *See Brown*, 691 N.E.2d at 445. The instruction then goes on to provide three options for the State to prove fleeing. In doing so, it essentially mandated the jury to find that Batchelor fled if it found the predicate fact that he did not have an adequate safety reason for stopping sooner. In addition to potentially being a mandatory presumption instruction in violation of the United States Constitution, it could run afoul of the Indiana Constitution's requirement that the jury be the judge of both the law and the facts in a criminal case. *See Higgins*, 783 N.E.2d at 1186 (citing Ind. Constitution Art. 1, § 19).

[22] Another difficulty with the instruction given is that it emphasizes certain evidence—or rather in this case, unduly emphasizes a lack of evidence—and invites the jury to violate its obligation to consider all the evidence. Instructions that single out certain portions of the evidence in such a way are improper, confusing, and misleading. *Marks v. State*, 864 N.E.2d 408, 411–12 (Ind. Ct. App. 2007) (citing *Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003)). Essentially,

the instruction invites the jury to focus solely upon whether Batchelor had a personal safety-related reason for his actions, which is a consideration that does not appear within the statutory definition of resisting law enforcement. In *Marks*, we disapproved of an instruction that listed seven different factors that "can establish impairment" for purposes of operating a vehicle while intoxicated. Among other things, we noted that, "[i]n stating that certain specific evidence can establish impairment, the instruction leaves jurors to wonder whether other evidence . . . cannot be used to establish impairment." *Id.* at 412. Here, likewise, by emphasizing to the jury that a fleeing would not be established if Batchelor had a safety reason for not stopping sooner, it could have confused the jury and precluded it from considering whether other evidence could have justified his not stopping sooner or established that he was not fleeing Deputy Switzer.

[23] We realize that our reversal of Batchelor's conviction based on fundamental instructional error may create some tension with this court's opinion in *Cowans*. That opinion dealt with the specific situation of a defendant who claimed not to have pulled over sooner out of fear for his personal safety, its discussion regarding instructing the jury in a similar case was dicta, and giving its recommended jury instruction was incumbent upon the defendant requesting it. It should not have been applied in a dissimilar case where the defendant was not making such a claim and did not request an instruction on that point. To the extent this opinion more generally questions the propriety of the instruction, we do not recognize horizontal stare decisis between decisions made by

different panels of this court. *See In re F.S.*, 53 N.E.3d 582, 596 (Ind. Ct. App. 2016).

## Conclusion

[24] We reverse Batchelor's conviction for Level 6 felony resisting law enforcement by fleeing in a vehicle. Because Batchelor has not presented argument as to how this instructional error would impact his convictions for Level 5 felony battery on a law enforcement officer and Class A misdemeanor resisting law enforcement, those convictions are affirmed. We remand for further proceedings, i.e. retrial, if the State so elects.

[25] Affirmed in part, reversed in part, and remanded.

Najam, J., and Mathias, J., concur.