

FILED
Apr 27 2016, 8:25 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Cowans,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 27, 2016<br><br>Court of Appeals Case No.<br>49A05-1508-CR-1196<br><br>Interlocutory Appeal from the<br>Marion Superior Court<br><br>The Honorable Helen W. Marchal,<br>Judge<br><br>Trial Court Cause No.<br>49G15-1412-F6-53936 |

**Baker, Judge.**

[1] Christopher Cowans appeals his conviction for Level 6 Felony Resisting Law Enforcement.[1] He argues that the trial court abused its discretion when it refused his tendered instruction on mistake of fact. Finding that Cowans's belief is better characterized as a mistake of law than of fact, we affirm.

# Facts[2]

[2] On December 4, 2014, around 7:45 p.m., an Indianapolis police officer was patrolling near the intersection of Raymond and Meridian Streets, in uniform and in a marked police car, when he saw a black truck with a temporary tag. He typed the tag number into his computer, and discovered that the tag was not on file. He decided to follow the truck so that he could reenter the number.

[3] Cowans noticed that a police car had started following him, but he did not want to be followed. He thought that if he pulled through a gas station and came out the other side, the police car would continue on its original path and leave him alone. As part of his maneuver, however, Cowans ended up in the middle lane on Meridian going north. That lane was reserved for southbound traffic during that time of night. The officer saw Cowans commit this traffic violation and felt that Cowans was being purposefully evasive, so he turned on his flashing lights.

---

[1] Ind. Code § 35-44.1-3-1(a)(3).

[2] We heard oral argument in this case on April 4, 2016, in the University Center West building of the University of Southern Indiana in Evansville. We thank counsel for their able and informative oral advocacy.

[4]    At first, Cowans pulled over to the side of the road. As the officer was filling out paperwork, Cowans started driving again. Cowans did not, however, begin a high-speed car chase; he drove below the speed limit and led the officer on a six-minute, three-mile "chase." At one point, Cowans stopped at a red light, but then continued through the intersection while the light was still red. Around this time, Cowans held his cell phone out of his window.[3] After he turned onto Kentucky Avenue, Cowans found himself behind a long line of vehicles stopped at a red light. He put his truck into park, put both of his hands out of the window, and voluntarily surrendered himself. The officer noted that Cowans was cooperative and calm.

[5]    Cowans would later testify that he had recently seen several accounts on the news of police officers having violent encounters with unarmed Black males. When he saw the officer's lights, Cowans said that he felt scared, and that he decided to go to a better-lit area before stopping, in case the officer did something to him. Cowans testified that he "saw it on the news" that citizens are allowed to drive to a well-lit area before stopping if they are in fear of their safety. Tr. p. 65. The officer who was following him, however, testified that Cowans drove past a well-lit overpass, a well-lit intersection at Harding Street, a well-lit intersection at Belmont Avenue, as well as Eli Lilly's well-lit campus. Tr. p. 48-50.

---

[3] Cowans says he did this because he had heard stories of police officers mistaking a suspect's cell phone for a weapon.

[6] Cowans was charged with resisting law enforcement by fleeing, which becomes a Level 6 felony if done by vehicle. I.C. § 35-44.1-3-1(a)(3). At his June 17, 2015, trial, Cowans tendered a jury instruction as to a "mistake of fact." He characterized his belief "that people being stopped by police if they feared for their safety could drive till they found a public lighted place to surrender" as an honest and reasonable mistake of fact. Tr. p. 69-70. The State objected, arguing that this belief would not be a mistake of fact, but rather a mistake of law, and that the substance of Cowans's argument was already addressed by the "knowingly" element in the resisting arrest charge. The trial court sided with the State, and denied Cowans's mistake of fact instruction. Following a trial by jury, Cowans was found guilty as charged. The trial court sentenced him to 545 days, with 90 days on home detention and 455 days on probation. Cowans now appeals.

## Discussion and Decision

[7] Cowans has one argument on appeal: he argues that the trial court committed reversible error when it declined to issue his tendered mistake of fact instruction. It is within the sound discretion of the trial court to instruct a jury, and we review that decision for an abuse of discretion. *Washington v. State*, 997 N.E.2d 342, 345 (Ind. 2013). To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. *Munford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010). In general, a defendant in a criminal case is entitled to have the jury instructed on any theory of defense that has some

foundation in the evidence. *Burton v. State*, 978 N.E.2d 520, 525 (Ind. Ct. App. 2012). On appeal, a trial court's judgment may be affirmed on any basis apparent in the record, even if it is not the theory relied upon by the trial court. *Benham v. State*, 637 N.E.2d 133, 138 (Ind. 1994).

[8] The mistake of fact defense has been codified by our General Assembly: it is "a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." Ind. Code § 35-41-3-7. A person invoking this defense must satisfy three elements: 1) the mistake was honest and reasonable; 2) the mistake was about a matter of fact; and 3) the mistake negates the culpability required to commit the crime. *Potter v. State*, 684 N.E.2d 1127, 1135 (Ind. 1997).

[9] The trial court decided that the first of these elements was not met. Although it granted that Cowans could have honestly believed that he was entitled to continue driving to a better-lit area, the trial court concluded that this belief was not reasonable. While we believe the trial court reached the correct result, we prefer to focus on the second element. We find that the mistake Cowans alleges he made is a mistake of law, not fact.

[10] It is well settled that ignorance of the law is no excuse for criminal behavior. *Yoder v. State*, 208 Ind. 50, 194 N.E. 645, 648 (1935). Cowans attempts to distinguish his argument from a mistake of law defense: his "defense was not that he was unaware he was required to stop when an officer commands . . . .

His factual mistake was his delay in stopping and deciding to stop further down Raymond Street." Appellee's Br. p. 12.

[11] A mistake of fact defense would be appropriate in this case if Cowans testified that he thought the flashing lights behind him were those of a tow truck, rather than police lights; or if he thought the police lights were directed at another vehicle rather than his own; or if he did not see the lights at all. But Cowans has testified throughout that he saw the police lights and knew that the officer wanted him to pull over. Assuming that Cowans made a mistake, it would be a mistake of law—he thought that there was a legal principle that gave him the right to drive to a location that he considered safer. A mistaken fact regarding what the law says is still a mistake of law. Thus, Cowans's argument on appeal is unavailing.

[12] But we would be remiss if we did not address some of the underlying issues of this case, which are likely to reoccur for other citizens of Indiana. Cowans is far from alone in his belief that motorists are allowed to drive to a safe location after being ordered to stop by flashing police lights. Although rare, it is not unheard of for a person to impersonate a police officer. *See* Jennie Runevitch, *Another Police Impersonator Spotted in Central Indiana*, WTHR (Oct. 31, 2015, 8:16 PM), http://www.wthr.com/story/30356144/another-police-impersonator-spotted-in-central-indiana. Multiple news stories quote local Sheriffs or prosecutors recommending that drivers seek a safe location to pull over. *See, e.g.,* Bob Kasarda, *Prosecutor Drops Fleeing Charge in Disputed Arrest of Portage Nurse*, THE TIMES OF NORTHWEST INDIANA (Apr. 6, 2015),

http://www.nwitimes.com/ news/local/porter/prosecutor-drops-fleeing-charge-in-disputed-arrest-of-portage-nurse/article_e9e37d31-826b-5e5d-a322-44be031f7619.html (quoting the Porter County Sheriff's Office as saying, "We would like to reiterate if you are ever being stopped by a vehicle that you do NOT believe is a police vehicle, then drive to a safe and well-lit area before you stop"). Internet commentary is almost unanimous in expressing a belief that citizens have this right. *See, e.g.,* Gayle Laakmann McDowell, Comment to *Are Felony Charges Appropriate for DelRea Good, the Indiana Woman Who Drove to a Parking Lot While Being Pulled Over for Speeding?,* Quora (Sep. 24, 2015), https://www.quora.com/Are-felony-charges-appropriate-for-DelRea-Good-the-Indiana-woman-who-drove-to-a-parking-lot-while-being-pulled-over-for-speeding ("On the contrary (based on the information reported), she should be applauded. The department should explain to the officer, and the other officers in the department, that people should do exactly what she did").

[13] Yet despite the fact that this belief is both common and sensible, we can find no express sanction for it in either the Indiana Code or case law. We have dealt with an argument similar to Cowans's in *Woodward v. State*, 770 N.E.2d 897 (Ind. Ct. App. 2002). In that case, Woodward drove roughly a mile to his residence while a police officer followed him with lights and sirens. *Id.* at 901. Woodward waited to pull over because he was "trying to rationalize why I would be pulled over," and he wanted to find a well-lit place. *Id.* The police officer, however, testified that Woodward passed two gas stations, a Meijer store, and a McDonalds. *Id.* We recognized that Woodward did not drive over

the speed limit or disobey traffic laws, but we could not "say that a person who has admitted to knowing that a police officer wishes to effectuate a traffic stop can, *without adequate justification*, choose the location of the stop." *Id.* at 902 (emphasis added). Because we must "be cognizant of the dangers that could await a police officer stopping where the citizen selects," we affirmed Woodward's conviction of resisting law enforcement by fleeing. *Id.*

[14] We are not aware of any case that has elucidated the one qualification we granted to Woodward, namely, that a person *with* an "adequate justification" might have some discretion to choose the location of a stop. Clearly, it cannot be the case that a driver must slam his brakes and come to an immediate stop or else face felony prosecution. Moreover, if a police officer begins flashing her lights behind a vehicle that is driving in the middle of a ten-lane highway, the driver clearly must be given time and distance to make her way over to the side of the road.

[15] The State argues that these concerns are entirely addressed by the "knowingly" element of the crime, which the jury was instructed on in this case. But this argument is belied by the closing argument made to the jury by the State:

> Ladies and gentlemen, it doesn't matter whether or not he thought he could stop somewhere else. [It] doesn't matter whether or not he thought that he could wait until he got to a safe place or delay his surrender or whatever words the Defense has used. You can't. If a police officer orders you to stop, you have to stop. If you are running on the street and the police officer orders you to stop and he is running after you, *you have to stop in your tracks*. You don't get to run wherever you want to

run. You have to *stop there* . . . . If he is in his vehicle and he has his lights and sirens going, that is an order to stop. You have to *stop right there* . . . . You have to stop when they tell you to stop. There is no provision, there is no defense, there is nothing in the law in the State of Indiana that says you get to decide where you stop. The only law that you will be given by the Judge and the Court here today is that you have to stop. That is all you have to do. It is very simple. And [Cowans] didn't do that.

Tr. p. 85-86 (emphases added).

[16] If a motorist on a ten-lane highway sees flashing lights, is she required to "stop in her tracks" to avoid committing a felony? If a motorist is aware that there are criminals impersonating police officers in the area, and sees flashing lights on an isolated road at night, is he required to "stop right there" to avoid committing a felony? It would be an intolerable state of affairs if basic common sense, not to mention the explicit advice of many police departments, turned ordinary citizens into felons.

[17] The State's focus on "knowingly" is misplaced; a person who seeks a well-lit area before stopping *knows* that he is doing so.[4] Instead, the focus should be on the definition of "flee." At closing argument, the State informed the jury that "in fact by the definition of fleeing as it is contained in the Indiana Code he did.

---

[4] The State acknowledged as much in its closing: "We also know that Mr. Cowans knowingly did this. He admitted both on direct and on cross that he knew that the officer was behind him. He knew that he was the target of the officer and he knew that he did not pull over. Ladies and gentlemen, none of these elements are in contention. The State has proved its case completely." Tr. 79.

He did flee. He didn't stop." Tr. 86-87. This information is incorrect—there is no definition of criminal flight in the Indiana Code.[5]

[18] *Black's Law Dictionary* (6th ed. 1990), defines "flee from justice" as

> Removing one's self from or secreting one's self within jurisdiction wherein offense was committed to avoid arrest; or concealing one's self therein, with intent, in either case, to avoid arrest, detention, or punishment for some criminal offense.

*Id.* at 639. And we have defined "flight" in the context of the resisting statute: "We conclude that 'flight' in this context should be understood to mean a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there." *Wellman v. State*, 703 N.E.2d 1061, 1063 (Ind. Ct. App. 1998). In the context of using flight from a crime scene as evidence of guilt, our Supreme Court has said that "[f]light is a conscious, overt act, known and accepted to be a response to a consciousness of guilt in a person and a means of preventing apprehension and punishment." *Hoskins v. State*, 441 N.E.2d 419, 427 (Ind. 1982).

[19] What all these definitions make clear is that a person who drives to a location of greater safety for her or the officer, intending only to be in a location of

---

[5] Indiana Code section 12-28-3-1 has a definition of "flight" and "fled," but it is limited to that chapter, which deals with the extradition of persons with mental illness who have fled another state. Cowans did not object to this statement at trial and does not raise the issue on appeal, and so we do not have occasion to decide whether this statement would be reversible error. Nevertheless, we hope prosecutors will be more careful with their claims about what statutes say in the future.

greater safety, is not "fleeing" from the police. Such a person is not attempting to "avoid arrest," or "escape law enforcement," or "prevent apprehension and punishment." Indeed, a person who seeks a well-lit area to stop, or who gradually slows down on a busy highway rather than slamming on his brakes, might facilitate the stop by making the stop safer for the officer. This is what we meant in *Woodward* when we referred to "adequate justification." 770 N.E.2d at 902.[6]

[20] We believe that a defendant charged with resisting law enforcement by fleeing by vehicle would be entitled, if he so requested, to have a jury instruction regarding the definition of the word "flee." This word is an element of the crime that the State is required to prove beyond a reasonable doubt. The definition would explain that a person who is attempting to escape police, or attempting to unnecessarily prolong the time before he is stopped, would be fleeing. The definition should also explain, however, that if a reasonable driver in the defendant's position would have felt unsafe to come to an immediate halt, and if the defendant took reasonable steps to increase the safety of the stop without unnecessarily prolonging the process, then the defendant was not fleeing. In short, the jury instruction would put the question of whether the driver had an "adequate justification" squarely before the factfinder.

---

[6] The *Woodward* defendant did not have an adequate justification for prolonging his stop because, as the officer testified, he passed multiple well-lit and well-attended businesses that were safe places to stop.

[21] This is precisely where the question should be, as the determination requires consideration of myriad facts: how long the driver continued, the speed, the use of hazard lights, the location, the weather, the surroundings, the presence of bystanders, the availability of places to stop, the credibility of witnesses, etc. Juries are uniquely positioned to decide whether a driver was unnecessarily increasing the burden on police officers, or whether a driver was taking reasonable steps that common sense would dictate. Of course we remain "cognizant of the dangers that could await a police officer stopping where the citizen selects," *Woodward*, 770 N.E.2d at 902, and so we reiterate that a driver does not have full discretion to choose to stop anywhere. But it would be equally absurd to hold that drivers have zero discretion to choose the location of a stop; whether the driver exercises that very limited discretion reasonably should be a question of fact for the jury.

[22] The judgment of the trial court is affirmed.

May, J., and Brown, J., concur.