

FILED

Sep 28 2017, 8:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David L. Joley
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dori J. West,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | September 28, 2017<br><br>Court of Appeals Case No.<br>02A04-1704-CR-783<br><br>Appeal from the Allen Superior<br>Court<br><br>The Honorable Frances Gull,<br>Judge<br><br>The Honorable Jason Custer,<br>Magistrate<br><br>Trial Court Cause No.<br>02D04-1610-CM-3878 |

**Altice, Judge.**

**Case Summary**

[1]     Dori J. West appeals from her conviction for Class A misdemeanor resisting law enforcement. She raises a number of claims on appeal, of which we find the following dispositive: Did the State present sufficient evidence to support the conviction?

[2]     We reverse and remand.

## Facts & Procedural History

[3]     During the summer and fall of 2014, the Fort Wayne Police Department and the Allen County Drug Task Force were investigating a major drug ring involving the sale of synthetic drugs. The investigation included, among other things, a number of controlled drug buys in or around West's neighborhood. On September 16, 2014, West's eighteen-year-old son Brandon Bermingham delivered 1.55 grams of spice to a confidential informant. This transaction took place on the sidewalk in front of West's home.

[4]     On October 2, 2014, police sought and obtained search warrants for eight homes involved in the investigation. No-knock warrants were authorized with respect to most of these homes, including West's home where Bermingham was the target. At about 6:10 a.m. on October 6, 2014, Fort Wayne Police Officer Kevin Zelt, commander of the Emergency Services Team (EST),[1] along with ten other EST officers, executed the warrant at West's home. The officers were

---

[1] The EST is a special operation team commonly referred to as SWAT.

in police tactical gear and most were armed with shotguns or submachine guns. Officer Eric Krull, however, was armed with a non-lethal weapon called a 40-millimeter foam baton launcher.

[5] As the EST encircled the property and prepared for entry, all was seemingly quiet inside West's home. Her eleven-year-old son was showering for school while she cooked breakfast. Her fiancé, Craig Cox, was asleep in a bedroom just off of the kitchen with West's two-year-old grandson. Cox's young teenage daughters were in the living room with their friend, who often came for breakfast before school. Bermingham was upstairs asleep.

[6] Just before the EST was about to force entry, Cox's thirteen-year-old daughter heard something outside and opened the front door. Upon seeing the armed individuals outside in the dark, she quickly closed the door and ran for West, who emerged from the kitchen. The officer assigned to the battering ram then forced the door open into the living room and shouted: "Police! We have a warrant! We're coming in!" *Transcript Vol*. 1 at 157. At the same time, officers broke through the window into the living room. The next several seconds were chaotic, as multiple officers shouted commands for the occupants to come out.

[7] West was standing in the hallway between the kitchen and the living room. She looked at the EST officers and then turned back toward the kitchen in an effort to reach her grandson still sleeping in the bedroom. Officer Krull observed West walking toward the dark bedroom and fired a foam baton at her. This occurred within about twenty seconds of entry by the EST. West fell to the

ground and then quickly exited the home without incident. The three girls and Cox also exited and were detained outside. Thereafter, officers went inside and removed the two-year-old and eleven-year-old boys, as well as Bermingham.

[8] On November 10, 2014, the State charged West with Class A misdemeanor resisting law enforcement by fleeing. After numerous delays and continuances, the case was dismissed on July 15, 2016, by motion of the State. Thereafter, on October 4, 2016, the State refiled the same charge under a new cause number. West filed a motion for discharge pursuant to Ind. Criminal Rule 4(C) on February 22, 2017. The trial court denied the motion and the case was tried before a jury on March 16, 2017. The jury found West guilty as charged, and the trial court subsequently sentenced her to 365 days in jail, with 305 days suspended.

## Discussion & Decision

[9] On appeal, West presents a number of colorable claims, each of which were preserved below. These include a Crim. Rule 4(C) issue, a challenge to the no-knock warrant and the execution of the warrant, an issue regarding the exclusion of evidence, and a sufficiency of the evidence claim. Because we find the sufficiency claim dispositive, we do not reach the other issues.

[10] When we consider a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of the witnesses. *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016). Instead, we consider only the evidence and reasonable inferences supporting the verdict. *Id.* We will affirm the conviction

if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

[11] Resisting law enforcement, as charged in this case, is defined as "knowingly or intentionally…flee[ing] from a law enforcement officer after the officer has, by visible or audible means…identified himself or herself and ordered the person to stop". Ind. Code § 35-44.1-3-1(a)(3). West argues that the officers never ordered her to stop and that she was not fleeing from law enforcement when she walked toward the bedroom to protect her two-year-old grandson.

[12] There is no statutory definition of criminal flight in this context. *See Cowans v. State*, 53 N.E.3d 540, 545 (Ind. Ct. App. 2016). This court, however, has indicated that flight in the context of the resisting statute "should be understood to mean a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there." *Id.* (quoting *Wellman v. State*, 703 N.E.2d 1061, 1063 (Ind. Ct. App. 1998)).

[13] The State argues that West's desire to bring her grandson out of the bedroom as the home was being raided by police does not mean that she did not flee after being told to stop. Ignoring *Cowans*, the State baldly asserts: "The reason why Defendant turned the other way is irrelevant from the point of view of the statute, which, on its face, provides no exceptions for noncompliance with a

police officer's orders."[2]  *Appellant's Brief* at 36.  On the contrary, West's intent when walking away from the officers was relevant to a determination of guilt. *See Cowans*, 53 N.E.3d at 545 ("a person who drives to a location of greater safety for her or the officer, intending only to be in a location of greater safety, is not 'fleeing' from the police", as she is not "attempting to 'avoid arrest,' or 'escape law enforcement,' or 'prevent apprehension and punishment'").

[14]  From the evidence admitted at trial, a reasonable jury could conclude that West was aware that the individuals who had just breached her home were police officers and that they wanted all the occupants, including her, to exit the residence.  But there is no evidence from which a reasonable factfinder could conclude that West intended to flee, escape, or even unnecessarily prolong her exit from the home.  Moreover, in the twenty seconds of chaos during which West is alleged to have fled from police by walking toward her grandson's bedroom, there is no evidence that West was ordered to stop.  Rather, upon forcing entry into the home, various officers shouted commands and "instructed everyone inside to exit."  *Appellee's Brief* at 35.  Directing West to exit her home was not the same thing as ordering her to stop.  *See Vanzyll v. State*, 978 N.E.2d 511, 516-17 (Ind. Ct. App. 2012) (reversing conviction for resisting law

---

[2] The State similarly argued to the jury: "The fundamental thing for you to decide is did the Defendant know the law enforcement officers were law enforcement officers when she decided to walk towards the kitchen." *Transcript Vol. 2* at 55.

enforcement by fleeing where defendant was ordered multiple times to exit his home but was never commanded to stop).

[15] Under the facts and circumstances presented in this case, we conclude that the State's evidence was not sufficient to prove that West fled from the officers. We, therefore, reverse her conviction for resisting law enforcement and remand this case with instructions to vacate the judgment of conviction and sentence.

[16] Judgment reversed and remanded.

[17] Baker, J. and Bailey, J., concur.