# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 25 2018, 10:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen Celestino-Horseman
Austin & Jones, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Samichael Bradshaw,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 25, 2018<br><br>Court of Appeals Case No.<br>18A-CR-39<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Helen W. Marchal, Judge<br><br>Trial Court Cause No.<br>49G15-1706-F6-21747 |

**Bailey, Judge.**

# Case Summary

Samichael Bradshaw ("Bradshaw") appeals his convictions for Pointing a Firearm, as a Level 6 felony,[1] and Resisting Law Enforcement, as a Class A misdemeanor.[2] We affirm the felony conviction and reverse the misdemeanor conviction.

# Issues

Bradshaw presents three issues for review:

    I.    Whether the trial court abused its discretion in finding a child witness competent to testify;

    II.    Whether sufficient evidence supports the conviction for Pointing a Firearm; and

    III.    Whether sufficient evidence supports the conviction for Resisting Law Enforcement.

# Facts and Procedural History

On June 7, 2017, six-year-old M.H. went out into his Indianapolis neighborhood to ride his bike. A neighbor, who M.H. knew as "Michael," came outside also. (Tr. at 53.) After M.H. had been outside for about an hour,

---

[1] Ind. Code § 35-47-4-3(b).

[2] I.C. § 35-44.1-3-1(a)(3).

he ran into his house crying. M.H. exclaimed to his mother, Kendra Scott ("Scott"), that "Michael was just pointing a gun at me." (Tr. at 78.)

[4] Scott went outside and confronted Bradshaw, who was standing on the sidewalk in front of his house. Scott demanded "why the f--- did [Bradshaw] keep on f-----g with her son." (Tr. at 80.) Scott pointed to her holstered gun and asked if Bradshaw "wanted to meet her friend," to which Bradshaw responded "no, do you want to meet my friend." (Tr. at 80.) Bradshaw retreated to his porch and he and Scott yelled to each other to "come down the street." (Tr. at 81.) Scott advised Bradshaw that she would call the police and Bradshaw then left the porch and ran into his residence.

[5] After some time passed, Scott called 9-1-1 to report that her neighbor – across the street and four houses down – had purposely set his porch on fire and had earlier pointed a gun at her son. Scott reported her suspicions that Bradshaw suffered from mental health problems.

[6] Just before 8:00 p.m., Indianapolis Metropolitan Police Department officers responded to a report of a fire and "trouble with a person." (Tr. at 128.) As Officer Craig Solomon ("Officer Solomon") approached the scene and observed Bradshaw standing on his porch, Indianapolis firefighters were arriving; they remained outside pending police clearance of the scene. Officer Solomon stood near a vacant lot, about 50 feet from Bradshaw, and called out to Bradshaw that "he needed to come outside, that [they] needed to talk to him; that his house was on fire." (Tr. at 131, 138.) Bradshaw yelled out something not audible to

Officer Solomon and began to run into his house. Officer Solomon yelled "Stop" to Bradshaw, who continued into and remained within the house. (Tr. at 131.)

[7] Officer Solomon began yelling commands that anyone inside the house must come outside. He and other officers, some using a public-address system, repeatedly urged Bradshaw to come outside, assuring him that he was "not in trouble" and the officers "wanted to make sure he was alright." (Tr. at 146.) Bradshaw remained inside his home until a SWAT team deployed tear gas and extricated him. Bradshaw was taken by ambulance to a nearby hospital. As Officer Solomon and Bradshaw walked to the ambulance, Bradshaw apologized: "sorry man, I was just putting on a show for the neighborhood." (Tr. at 136.)

[8] On the following day, police officers executed a search warrant at Bradshaw's residence to search for firearms and ammunition. They found no gun, ammunition, or shell casings. Bradshaw was charged with two counts of Pointing a Firearm (one related to M.H. and one related to Scott) and one count of Resisting Law Enforcement.

[9] On November 15, 2017, Bradshaw was brought to trial before a jury. After a hearing on M.H.'s competency to testify, the trial court ruled that M.H. was a competent witness, and the State attempted to elicit testimony from him. However, M.H. answered only a few questions before he dissolved into tears and was carried from the courtroom. After the State verified that M.H. would

not be recalled as a witness, Bradshaw asked that M.H. be declared an incompetent witness and moved to strike Scott's testimony as hearsay. The trial court denied the motions together with Bradshaw's request for an admonishment to the jury.

The jury convicted Bradshaw of pointing a gun at M.H. and resisting law enforcement; the jury acquitted Bradshaw of pointing a gun at Scott. Bradshaw was sentenced to concurrent terms of 730 days, with 354 days suspended to probation for the Level 6 felony, and to 365 days for the Class A misdemeanor. He now appeals.

# Discussion and Decision

## Competence of M.H.

Bradshaw contends that M.H. was incompetent to testify and his brief appearance on the witness stand allowed the jury to speculate regarding the cause of M.H.'s tears.

Indiana Evidence Rule 601 provides, "Every person is competent to be a witness except as otherwise provided in these rules or by statute." In interpreting and applying Evidence Rule 601, we have observed that the rule's failure to presumptively exclude children does not prohibit special inquiry into their competency prior to testifying, when the defendant has raised the issue. *Burrell v. State*, 701 N.E.2d 582, 585 (Ind. Ct. App. 1998).

[13] A determination of witness competency lies within the sound discretion of the trial court, and we review its decision only for a manifest abuse of that discretion. *Aldridge v. State*, 779 N.E.2d 607, 609 (Ind. Ct. App. 2002), *trans. denied*. "A child's competency to testify at trial is established by demonstrating that he or she (1) understands the difference between telling a lie and telling the truth, (2) knows he or she is under a compulsion to tell the truth, and (3) knows what a true statement actually is." *Kien v. State*, 866 N.E.2d 377, 385 (Ind. Ct. App. 2007), *trans. denied*.

[14] M.H. provided two examples of a lie:

> If you didn't tell the truth, if somebody hit you, then that is telling a lie – if somebody really hits you and then you go to court and then if the people ask you then they, that is a lie. If someone hits you and you say no, they did not [hit] me."

(Tr. at 28-29.)

> If you told somebody that my house is right there and it is not then someone can be like you tricked me. You told me – you told a lie to me. And then you really bring them to your house and then and then they tell your mom.

(Tr. at 34.) M.H. was able to identify true statements made about clothing and carpet colors. When the trial court asked M.H. "why do we want to tell the truth," M.H. responded that "people might not trust you" if you lied. (Tr. at 27.) M.H. affirmed that he "could get in trouble" if he promised to tell the truth

but did not do so and he clarified that "trouble" would be "punishment." (Tr. at 31-32.)

The trial court's determination of competency is supported by evidence that M.H. knew the difference between a lie and the truth, knew he was under a compulsion to tell the truth, and knew what a true statement was. We decline to find that the trial court abused its discretion due to developments after the competency hearing, that is, M.H. dissolved into tears and was removed from the courtroom. The competency determination was consistent with evidence as to the requisite factors and will not be disturbed.

## Sufficiency of the Evidence – Pointing a Firearm

[15] To convict Bradshaw of Pointing a Firearm, as charged, the State was required to prove beyond a reasonable doubt that Bradshaw knowingly or intentionally pointed a handgun at M.H.[3] *See* I.C. § 35-47-4-3; App. Vol. II, pg. 18.

---

[3] Indiana Code Section 35-47-4-3(b) provides: "A person who knowingly or intentionally points a firearm at another person commits a Level 6 felony. However, the offense is a Class A misdemeanor if the firearm was not loaded."

Here, a search of Bradshaw's residence yielded no firearm or ammunition and there was no evidence at trial directed to whether Bradshaw pointed a loaded or unloaded handgun. The State was under no obligation to charge Bradshaw with a misdemeanor as opposed to a felony. In *Adkins v. State*, 887 N.E.2d 934, 937 (Ind. 2008), our Indiana Supreme Court observed: "The elements of Class D [now Level 6] Felony Pointing a Firearm simply do not include a requirement that the gun be loaded." A defendant who claims that his or her firearm was unloaded is attempting "to prove a mitigating factor that reduces, but not wholly excuses, his culpability." *Id.* at 938. If a defendant charged with felony Pointing a Firearm "seeks instead to be convicted of Class A Misdemeanor Pointing a Firearm, the defendant must place the fact of the gun having been unloaded at issue if the State's evidence has not done so." *Id.* Once at issue, the State is required to prove beyond a reasonable doubt that the firearm was loaded.

As such, a defendant may maintain that he did not possess or point a handgun at all, but he does so at his peril. The jury is invited to return a verdict on the felony offense only. But if a defendant admits to pointing an unloaded firearm, he could request an instruction upon, and potentially be convicted of, a lesser offense.

Bradshaw asserts that the State failed to prove he was the person who pointed a handgun at M.H.

[16] The standard of review for a sufficiency of the evidence claim is well settled:

> [T]his Court should only reverse a conviction when reasonable persons would not be able to form inferences as to each material element of the offense. *Perez v. State*, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007), *trans. denied*. We do not reweigh evidence or judge the credibility of witnesses. *Id.* at 213. In addition, we only consider the evidence most favorable to the judgment and the reasonable inferences stemming from that evidence.

*Moore v. State*, 49 N.E.3d 1095, 1106 (Ind. 2016).

[17] Scott testified that M.H. ran into the house crying and said, "mommy, mommy, Michael was just pointing a gun at me." (Tr. at 78.) Scott had then gone outside and encountered Bradshaw on the sidewalk. M.H. testified that he remembered the day that firetrucks came to his neighborhood and that a neighbor he knew as Michael had been outside.

[18] Bradshaw observes that M.H. did not identify Bradshaw as the same "Michael" who pointed a gun at him and Scott admitted she did not see anyone point a gun at her son. Nonetheless, the State presented circumstantial evidence of Bradshaw's identity as the person who pointed a gun at M.H., that is, he was present before and after M.H. tearfully reported the handgun encounter. "Elements of offenses and identity may be established entirely by circumstantial evidence and logical inferences drawn therefrom." *Bustamante v. State*, 557

N.E.2d 1313, 1317 (Ind. 1990). Circumstantial evidence is no different than other evidence for the purpose of supporting a conviction, and standing alone may be sufficient. *R.L.H. v. State*, 738 N.E.2d 312, 315 (Ind. Ct. App. 2000). The State presented sufficient evidence to establish beyond a reasonable doubt that Bradshaw knowingly or intentionally pointed a handgun at M.H.

## Sufficiency of the Evidence – Resisting

[19]    To convict Bradshaw of Resisting Law Enforcement, as charged, the State was required to prove beyond a reasonable doubt that Bradshaw knowingly or intentionally fled from Officer Solomon, a law enforcement officer, after the officer had, by visible or audible means, identified himself, and ordered Bradshaw to stop. *See* I.C. § 35-44.1-3-1(a)(3); App. Vol. II, pg. 18. Bradshaw argues that the State failed to show that he knowingly or intentionally fled.

[20]    In the context of the resisting statute, "flight" is "a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there." *Cowans v. State*, 53 N.E.3d 540, 545 (Ind. Ct. App. 2016). According to Bradshaw, there is no evidence that he heard Officer Solomon's command to stop but he stopped anyway; he remained inside his residence surrounded by police.

[21]    Officer Solomon testified that he approached Bradshaw's residence and "got approximately even with the vacant lot that is just to the north of [the residence]" such that he was "in the ballpark" of 50 feet from Bradshaw's

porch, where Bradshaw stood.  (Tr. at 131.)  Officer Solomon testified regarding his interaction with Bradshaw:

> Question: And what did you do when you saw this male?
>
> Officer: I yelled out to him that he needed to come outside, that we needed to talk to him; that his house was on fire.
>
> Question: And what did the man do?
>
> Officer: He yelled something back that I couldn't understand and then turned and ran into his house at which point I yelled at him to stop.
>
> Question: Okay so you yelled at him to stop?
>
> Officer:  Yes.
>
> Question:  Did he stop?
>
> Officer:  No he ran headlong into his house.

(Tr. at 131.)  From this concise testimony, it appears that Bradshaw was already advancing from his porch further into his residence when the order to stop emanated.  We need not question the propriety of ordering a person to stop inside a burning structure or speculate upon whether a retreating person could hear a command given 50 feet away amid an emergency response scene.  One circumstance is evident:  Bradshaw came to a stop.  His non-compliant behavior was that of refusing to come outside despite multiple officers' repeated

(and sometimes publicly broadcast) entreaties. Nonetheless, Bradshaw was not charged with a crime concerning his response to the fire emergency. And directing a person to exit a home is not the same as ordering a person to stop. *West v. State*, 85 N.E.3d 608, 611 (Ind. Ct. App. 2017). The State did not present sufficient evidence from which a jury could find beyond a reasonable doubt that Bradshaw fled from Officer Solomon. As such, this conviction must be reversed.

# Conclusion

[22] The trial court did not abuse its discretion in finding M.H. competent to testify. Sufficient evidence supports Bradshaw's conviction for Pointing a Firearm. Insufficient evidence supports Bradshaw's conviction for Resisting Law Enforcement.

[23] Affirmed in part, reversed in part.

Crone, J., and Brown, J., concur.