

FILED

Nov 20 2023, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David L. Joley
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana


Daylon L. Welliver
J.T. Whitehead
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven Slater, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | November 20, 2023<br><br>Court of Appeals Case No.<br>22A-CR-3060<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Steven O. Godfrey, Judge<br><br>Trial Court Cause No.<br>02D04-2208-F6-001027<br>02D06-2204-F6-00496 |

**Opinion by Judge May**
Chief Judge Altice and Judge Mathias concur.

**May, Judge.**

[1] Steven Slater, Jr., appeals following his convictions of Level 6 felony possession of methamphetamine[1] and Class A misdemeanor resisting law enforcement,[2] his adjudication as a habitual offender,[3] and the revocation of his probation as a result of his new convictions. Slater presents four issues for our review, which we consolidate and restate as:

> 1. Whether the State presented sufficient evidence to support Slater's convictions of:
>
>> 1.1. possession of methamphetamine; and
>>
>> 1.2. resisting law enforcement;
>
> 2. Whether Slater's aggregate sentence for his criminal convictions is inappropriate given the nature of his offenses and Slater's character; and
>
> 3. Whether the trial court abused its discretion by revoking two-and-a-half years of Slater's probation.

We affirm.

---

[1] Ind. Code § 35-48-4-6.1(a).

[2] Ind. Code § 35-44.1-3-1(a).

[3] Ind. Code § 35-50-2-8.

# Facts and Procedural History[4]

[2] On October 30, 2021, Slater stole a change machine from a hotel in Fort Wayne, Indiana. The State charged Slater with Level 6 felony theft in case number 02D06-2204-F6-000496 ("F6-496"), and pursuant to a plea agreement, Slater pled guilty to the offense on August 4, 2022. The trial court sentenced Slater to a term of two-and-a-half years in the Indiana Department of Correction ("IDOC"). However, the trial court suspended execution of that sentence and placed Slater on probation.

[3] On August 13, 2022, Detective Chris Hoffman of the Fort Wayne Police Department was on patrol near the Economy Inn on West Coliseum Boulevard in Fort Wayne. Detective Hoffman observed a black Hyundai Elantra drive into the hotel's parking lot, and he watched as two individuals he recognized—Slater and Morgan Rayoum—got into the car. Slater sat in the backseat on the driver's side, and Rayoum sat in the backseat on the passenger's side. Reginald Edwards was driving the Elantra. Detective Hoffman knew Rayoum had an active warrant out for her arrest, and he decided to initiate a traffic stop of the vehicle as it drove away from the hotel. Detective Hoffman was driving an unmarked police car at the time. The car had "multiple emergency lights on it

---

[4] We heard oral argument in this case on October 31, 2023, at DeKalb County High School. We commend counsel for their advocacy and thank the school's faculty, staff, and students for their warm reception and hospitality.

in the front, back, on the mirrors, and the grill, on the front windshield. It's—it's highly illuminated when it's activated." (Tr. Vol. II at 74.)

[4] Detective Hoffman activated the emergency lights and siren on his vehicle, and Edwards pulled the Elantra over to the side of the road. Detective Hoffman was wearing his full police uniform at the time, and he approached the back passenger's side of the vehicle to speak with Rayoum. Detective Hoffman noticed "an abnormal amount of movement" from Slater as he walked toward the Elantra. (*Id*. at 75.) Detective Hoffman asked Rayoum to exit the vehicle, and Detective Hoffman proceeded to take Rayoum to the ground to handcuff her. While Detective Hoffman was "dealing with" Rayoum, he also noticed Slater "grabbing things off the center of the seat, throwing it into one hand. He's all over the seat clearly grabbing small items or contraband off the seat. He goes into the brown purse the entire time." (*Id*. at 77.) Seconds later, Slater exited the vehicle and sprinted away, leaving the brown purse in the vehicle. Inside the vehicle, Detective Hoffman found a baggie "on the inner door threshold on the rear driver's side door." (*Id*. at 84.) The substance inside the baggie was later determined to be 1.8 grams of methamphetamine.

[5] Police apprehended Slater on August 20, 2022, and on August 25, 2022, the State charged Slater with Level 6 felony possession of methamphetamine and Class A misdemeanor resisting law enforcement in case number 02D04-2208-F6-001027 ("F6-1027"). The State also filed a verified petition for revocation of Slater's probation in F6-496. On October 24, 2022, the State amended the charging information in F6-1027 to allege Slater was a habitual offender. The

trial court held a jury trial in F6-1027 on November 9, 2022. After the State rested, Slater moved for a directed verdict with respect to the Class A misdemeanor resisting law enforcement charge because "[t]here was no evidence that Officer Hoffman ever told [Slater] to stop." (*Id*. at 109.) The trial court denied the motion. Slater then testified that the methamphetamine belonged to Edwards, who threw the drugs into the back of the car during the traffic stop. The jury returned verdicts finding Slater guilty of possession of methamphetamine and of resisting law enforcement. The jury then heard evidence about whether Slater qualified for the habitual offender enhancement. While the jury deliberated on that question, the trial court found Slater violated the terms of his probation in F6-496 by committing the new criminal offenses of which he was convicted in F6-1027. The jury returned a verdict finding Slater was a habitual offender.

[6] On December 2, 2022, the trial court held a combined hearing to address both Slater's sentence with respect to F6-1027 and his sanction for violating the terms of his probation in F6-496. The trial court ordered Slater to serve the entirety of his previously suspended two-and-a-half-year sentence in F6-496 in the IDOC. In F6-1027, the trial court found Slater's criminal history to be an aggravating factor, and the trial court did not find any mitigators. The trial court sentenced Slater to two years of imprisonment for possession of methamphetamine, enhanced by an additional six years because of the habitual offender finding, and one year for resisting law enforcement. The trial court ordered the possession of methamphetamine and resisting law enforcement

sentences to be served concurrently, for an aggregate term of eight years in the IDOC. The trial court ordered Slater to serve his sentences in F6-496 and F6-1027 consecutively, resulting in a combined term of imprisonment in the two cases of ten-and-one-half years.

# Discussion and Decision

## 1. Sufficiency of the Evidence

[7] We apply a well-settled standard of review to claims challenging the sufficiency of the evidence to support a conviction:

> Sufficiency-of-the-evidence claims . . . warrant a deferential standard, in which we neither reweigh the evidence nor judge witness credibility. Rather, we consider only the evidence supporting the judgment and any reasonable inferences drawn from that evidence. We will affirm a conviction if there is substantial evidence of probative value that would lead a reasonable trier of fact to conclude that the defendant was guilty beyond a reasonable doubt.

*Powell v. State*, 151 N.E.3d 256, 262-63 (Ind. 2020) (internal citations omitted).

### *1.1 Possession of Methamphetamine*

[8] Slater argues the State failed to present sufficient evidence that he possessed the methamphetamine found in the vehicle. Indiana Code section 35-48-4-6.1 provides: "A person who . . . knowingly or intentionally possesses methamphetamine (pure or adulterated) commits possession of methamphetamine, a Level 6 felony[.]" To satisfy the possession element of

the offense, the State must prove the defendant had either actual or constructive possession of the contraband. *Parks v. State*, 113 N.E.3d 269, 273 (Ind. Ct. App. 2018). "For the State to prove constructive possession, it must prove the defendant had the intent and capability to maintain dominion and control over the contraband. To prove intent to maintain dominion and control, there must be additional circumstances supporting the inference of intent." *Id.* (internal citation omitted). Such additional circumstances may include:

> (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

*Id.*

[9] Here, when Detective Hoffman initiated the traffic stop, Slater began gathering items on the backseat of the vehicle, and then Slater sprinted away while Detective Hoffman interacted with Rayoum. Shortly thereafter, Detective Hoffman found a baggie of methamphetamine near where Slater had been sitting in the Elantra and by the door Slater used to exit the vehicle, which permits an inference that Slater dropped a baggie of methamphetamine that he was trying to take with him when he exited the car. Thus, these additional circumstances—furtive gestures, flight, and proximity—indicate Slater had the intent to maintain dominion and control over the contraband. *Id.* Therefore, the State presented sufficient evidence to convict Slater of possession of

methamphetamine. *See, e.g.*, *Wilson v. State*, 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (holding the State presented sufficient evidence of the defendant's exercise of constructive possession over drugs when the drugs were found near the driver's seat of vehicle the defendant was driving and the defendant fled from officers during traffic stop), *trans. denied*.

### 1.2 Resisting Law Enforcement

Slater also contends the State did not present sufficient evidence to support his conviction of Class A misdemeanor resisting law enforcement. Indiana Code section 35-44.1-3-1(a)(3) provides:

> (a) A person who knowingly or intentionally:
>
> \*\*\*\*\*
>
>> (3) flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;
>
> commits resisting law enforcement, a Class A misdemeanor[.]

Slater argues he did not commit the offense of resisting law enforcement because Detective Hoffman never orally ordered him to stop. At oral argument, Slater explained: "We are here today about the absence of one word. One word. Stop!" (Oral Argument at 1:48-57.) "Our first task when interpreting a statute is to give its words their plain meaning and consider the structure of the statute as a whole. We avoid interpretations that depend on

selective reading of individual words that lead to irrational and disharmonizing results." *ESPN, Inc. v. Univ. of Notre Dame Police Dept.*, 62 N.E.3d 1192, 1195 (Ind. 2016) (internal quotation marks and citation omitted). We pay attention both to what a statute says and to what it does not say. *Id.*

[12] We have consistently held that a police officer can both identify himself or herself as a law enforcement officer and order the person to stop through means other than an oral order to stop. In *Fowler v. State*, we explained:

> A police officer's order to stop need not be limited to an audible order to stop. The order to stop may be given through visual indicators. Evidence of a proper visual order to stop is based on the circumstances surrounding the incident and whether a reasonable person would have known that he or she had been ordered to stop.

878 N.E.2d 889, 894-95 (Ind. Ct. App. 2008) (internal citations omitted). For example, in *Conley v. State*, we held sufficient evidence supported the defendant's conviction of resisting law enforcement when the defendant ran away after a fully uniformed officer raised his hand to signal for the defendant to stop. 57 N.E.3d 836, 839 (Ind. Ct. App. 2016), *trans. denied*. Likewise, in *Cowans v. State*, we affirmed the defendant's conviction of resisting law enforcement even though the officer never orally directed the defendant to stop because the defendant continued driving for three miles after the officer activated the lights and siren on his patrol vehicle and began following the defendant. 53 N.E.3d 540, 541-42 (Ind. Ct. App. 2016), *disapproved on other grounds by Batchelor v. State*, 119 N.E.3d 550, 562-63 (Ind. 2019) (disapproving

specific jury instruction on the definition of "flee" proposed by the panel in *Cowans* because of the instruction's potential to confuse and mislead a jury).

[13] When a police officer initiates a traffic stop, the officer seizes all occupants of the vehicle, not only the driver. *See Marshall v. State*, 117 N.E.3d 1254, 1258 (Ind. 2019) ("When a law enforcement officer stops a vehicle for a suspected traffic infraction like speeding, that officer seizes the vehicle's occupants under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution[.]"); *see also Guthery v. State*, 180 N.E.3d 339, 347 (Ind. Ct. App. 2021) ("For the duration of a traffic stop, an officer effectively seizes everyone in the vehicle, the driver as well as any passengers."), *trans. denied*. When Detective Hoffman activated the lights and siren of his patrol vehicle, he both identified himself as a law enforcement officer and ordered all the Elantra's occupants to stop. Slater reads "ordered the person to stop" in Indiana Code section 35-44.1-3-1(a)(3) to require a police officer to issue an individualized oral command to each passenger, but we disagree with this reading of the statute because requiring police officers to individually address each passenger in a vehicle at the beginning of a traffic stop – when the law already presumes the passengers are not free to leave – would be an absurd result. *See, e.g.*, *ESPN, Inc.*, 62 N.E.3d at 1199-1200 (holding a reading of a statute that would have included a private university's police department within the meaning of "public agency" would lead to absurd results).

[14] Slater also directs us to *West v. State*, in which we held the evidence was insufficient to support the defendant's conviction of resisting law enforcement

when drug task force officers stormed into the defendant's home and shot her in the back with a foam baton as she walked toward a bedroom in the house to retrieve her sleeping two-year-old grandson. 85 N.E.3d 608, 610 (Ind. Ct. App. 2017). We determined there was no evidence from which a reasonable jury could conclude the defendant intended to flee from the police, in part because "in the twenty seconds of chaos during which West is alleged to have fled from police by walking toward her grandson's bedroom, there is no evidence that West was ordered to stop." *Id*. at 611.

[15] However, *West* is distinguishable from the instant case for two key reasons. First, Detective Hoffman's traffic stop of the Elantra was not the same type of chaotic situation that unfolded in *West*. It was a relatively routine traffic stop. Detective Hoffman activated his lights and siren, and Edwards understood these signals to mean that he should immediately pull over. Yet, mere seconds after Detective Hoffman approached the vehicle, Slater sprinted away from the vehicle. Second, Slater's motivation for running away from Detective Hoffman was different from West's motivation in walking away from the police officers who entered her house. While West simply intended to retrieve her grandchild, Slater fled the scene of the traffic stop to avoid arrest. Therefore, we hold the State presented sufficient evidence to support Slater's conviction of Class A misdemeanor resisting law enforcement. *See*, *e.g.*, *Whaley v. State*, 843 N.E.2d 1, 10 n.8 (Ind. Ct. App. 2006) (holding sufficient evidence supported the defendant's conviction of resisting law enforcement when, after an officer

activated his lights and siren, the defendant drove his car into a ditch and then began to flee on foot), *trans. denied*.

## 2. Inappropriate Sentence

[16] Slater also argues his aggregate eight-year sentence for his criminal convictions in F6-1027 is inappropriate given the nature of his offenses and his character. Our standard of review regarding such claims is well-settled:

> Indiana Appellate Rule 7(B) gives us the authority to revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Our review is deferential to the trial court's decision, and our goal is to determine whether the appellant's sentence is inappropriate, not whether some other sentence would be more appropriate. We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. The appellant bears the burden of demonstrating his sentence [is] inappropriate.

*George v. State*, 141 N.E.3d 68, 73-74 (Ind. Ct. App. 2020) (internal citations omitted).

[17] When we evaluate whether a sentence is inappropriate given the nature of the offense, we first look at the advisory sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). Indiana Code section 25-50-2-7(b) provides: "A person who commits a Level 6 felony (for a crime committed after June 30, 2014) shall be imprisoned for a fixed term of between six (6) months and two and one-half (2 ½) years, with the advisory sentence being one (1) year." Indiana Code section 35-50-2-8(i) states: "The

court shall sentence a person found to be a habitual offender to an additional fixed term that is between . . . three (3) years and six (6) years, for a person convicted of a Level 5 or Level 6 felony." Indiana Code section 35-50-3-2 sets out: "A person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year[.]" Thus, the trial court imposed a sentence of only six months below the maximum sentence allowed by law for Slater's crimes.

[18] Regarding the nature of Slater's offenses, we agree with the State that they "are not particularly heinous." (Appellee's Br. at 21.) However, with respect to Slater's character, he has an extensive criminal history. Slater's juvenile history included a referral for acts that would constitute arson if committed by an adult. The juvenile court found Slater to be delinquent for acts that would constitute burglary if committed by an adult. The State also accused Slater of acts that would constitute battery if committed by an adult, and the juvenile court disposed of that case through an informal adjustment. Slater's adult criminal history included felony convictions of armed robbery, burglary, theft, possession of cocaine, and failure to return to lawful detention and misdemeanor convictions of resisting law enforcement, possession of marijuana, and criminal conversion. In addition, Slater's history included multiple probation revocations, including the revocation that occurred because of his crimes at issue herein occurring while he was on probation.

[19] Slater asserts he is "a person who obviously has very real substance abuse issues" and would benefit from a shorter term of imprisonment. (Appellant's

Br. at 21.) However, the Indiana Risk Assessment System score placed him at a high risk to reoffend, and Slater failed to curb his behavior after being convicted of similar offenses in the past. Therefore, we cannot say Slater's sentence in F6-1027 is inappropriate given the nature of his offenses and his character. *See*, *e.g*, *Denham v. State*, 142 N.E.3d 514, 518 (Ind. Ct. App. 2020) (holding defendant's sentence was not inappropriate given his extensive criminal history), *trans. denied*.

## 3. Revocation of Probation

[20] Slater contends his commission of two new offenses while on probation for theft in F6-496 does not warrant a full revocation of the two- and one-half year sentence order for F6-496.[5] "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. The trial court determines the conditions of probation and may revoke probation if the conditions are violated." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007) (internal citation omitted). We review a trial court's sanctioning decision following the revocation of probation for an abuse of discretion. *Id*. "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances." *Id*. Indiana Code section 35-38-2-3(h) provides

---

[5] Pursuant to Indiana Code section 35-50-1-2(e), Slater must serve his sentence in F6-1027 consecutive to his sentence in F6-496.

that, upon finding a probationer violated the terms of his probation, the trial court may:

> (1) Continue the person on probation, with or without modifying or enlarging the conditions.

> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

[21] Slater's criminal history supports the sanction imposed by the trial court. Before being convicted of theft in F6-496, Slater had a previous conviction of theft. In addition, he had been convicted of possessing drugs and resisting law enforcement before repeating those crimes, leading to his convictions in F6-1027. His criminal history also included multiple past revocations of probation. Given Slater's past failures to lead a law-abiding life or abide by the terms of his probation, we hold the trial court's sanction order was not an abuse of discretion. *See, e.g.*, *Wilkerson v. State*, 918 N.E.2d 458, 464 (Ind. Ct. App. 2009) (holding trial court did not abuse its discretion in sanctioning defendant to serve incarcerated the entirety of his previously suspended sentence).

## Conclusion

[22] The State presented sufficient evidence to support Slater's convictions of possession of methamphetamine and resisting law enforcement. Slater's

aggregate eight-year sentence in F6-1027 is not inappropriate given the nature of his offenses and his character. In addition, the trial court did not abuse its discretion in ordering Slater to serve the entirety of his previously suspended sentence in F6-496. We accordingly affirm the trial court.

[23] Affirmed.

Altice, C.J., and Mathias, J., concur.