NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-479

COMMONWEALTH

vs.

KEITH J. LYMAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant, Keith J. Lyman, was convicted of failure to stop for a police officer and assault and battery on a police officer.[1] On appeal, he contends that the judge's failure to provide jury instructions on self-defense and "justification" created a substantial risk of a miscarriage of justice. We affirm.

Background. On March 13, 2021, around 11:20 P.M., Massachusetts State Police Trooper Adam Couture was in full uniform in his marked cruiser on Route 2 in Greenfield. Observing a vehicle stopped at a traffic light, Trooper Couture conducted an inquiry on his mobile data terminal. After running

---

[1] The defendant was also charged with unlicensed operation of a motor vehicle. That count was dismissed at the request of the Commonwealth.

the vehicle's registration, he "learned that the vehicle was not inspected, and then also the registered owner had an expired Massachusetts license." Trooper Couture "waited until the light turned green," observed the vehicle turn on Route 2A, activated his emergency blue lights, and initiated a motor vehicle stop. After the vehicle pulled over, Trooper Couture spoke to the defendant, who was the driver and lone occupant. The defendant "seemed reluctant" to speak with Trooper Couture, and "seemed agitated that [Trooper Couture] was even stopping him." After Trooper Couture advised the reasons for the stop, the defendant said that "he did not understand how [Trooper Couture] knew the vehicle wasn't inspected because he didn't believe that there was a physical way of [Trooper Couture] being able to see the vehicle or the vehicle's inspection sticker." Trooper Couture attempted to explain that he gleaned that information from the computer in his cruiser, but the defendant "just stated that he believed he was being unlawfully detained." The defendant's tone was "relatively harsh . . . agitated . . . and abrasive."

The defendant provided his New York license to Trooper Couture, who returned to his cruiser and confirmed that the vehicle driven by the defendant was registered to the defendant in Massachusetts. Trooper Couture re-approached the vehicle and attempted to ask the defendant whether he lived in New York or Massachusetts. The defendant spoke over him, raised his voice,

2

and refused to answer any questions. "He was visibly angry and getting angrier." The defendant stated that he knew a Greenfield police officer with whom he wanted to speak and advised that "he wanted to go to a more populated area." As Trooper Couture attempted to de-escalate the situation, he observed the defendant "reach for the shifter and put the car into drive." Concerned that he might be struck by the vehicle and that the defendant was "fleeing from the stop," Trooper Couture attempted to open the door to the vehicle. He also told the defendant to stop and "put the vehicle in park." At some point, Trooper Couture reached into the vehicle, and the defendant struck his hand and arm multiple times with a closed fist. The defendant then grabbed Trooper Couture's arm, and continued to punch, and "rake" his arm and hand. Trooper Couture stepped away, drew his taser, warned the defendant that he would use his taser, but withdrew as the defendant drove away.

Trooper Couture radioed for backup and observed the defendant drive "down route 2A." Although Trooper Couture followed the defendant with his cruiser light activated, the defendant did not stop. Instead, he drove to the Greenfield Police Department parking lot where Trooper Couture and

3

additional police officers stopped and arrested him.[2]  As the defendant was being arrested and placed into a cruiser for transport to the State police barracks, he "kept referring to [a Greenfield Police Department] officer that he had a personal connection with and that he wanted [the State police troopers]" to contact.

Discussion.  The defendant claims that the judge erred by failing to instruct the jury on self-defense and justification. Where, as here, the defendant neither requested either instruction nor objected at trial to the instructions provided to the jury, our review is limited to whether there was any error, and if so, whether that error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

We first address the belated claim of self-defense.  "Where the facts of the case permit, a judge is required to instruct on that theory [of self-defense] even in the absence of a request from the defendant."  Commonwealth v. Kivlehan, 57 Mass. App. Ct. 793, 795 (2003).  More specifically, where nondeadly force is used, a defendant is entitled to an instruction on self-defense "if any view of the evidence would support a reasonable

_____

[2] An audio-video depicting the scene and arrest at the Greenfield Police Department parking lot was played for the jury and admitted in evidence as an exhibit.

4

doubt as to whether the prerequisites of self-defense were present." Commonwealth v. Pike, 428 Mass. 393, 395 (1998). Those prerequisites are: "(1) the defendant had a reasonable concern over his personal safety"; (2) the defendant "used all reasonable means to avoid physical combat"; and "(3) the degree of force used was reasonable in the circumstances" (quotation and citation omitted). Commonwealth v. Franchino, 61 Mass. App. Ct. 367, 369 (2004). However, "such an instruction need not be given where there was insufficient evidence to support a theory of self-defense." Commonwealth v. Maguire, 375 Mass. 768, 772 (1978).

In the present case, as the defendant concedes, he did not request a self-defense instruction at trial. That was for good reason, as he was not entitled to such an instruction where no view of the evidence would support a reasonable doubt that he used all reasonable means to avoid physical combat. There is no dispute that Trooper Couture lawfully stopped the defendant. In any event, a "permitted exercise of self-defense does not turn upon the legality or illegality of the arrest itself." See Commonwealth v. Urkiel, 63 Mass. App. Ct. 445, 448 (2005). Moreover, the defendant could have avoided physical combat by answering Trooper Couture's questions; by refusing to answer any questions but remaining on scene; or by not fleeing the scene. Indeed, even after attempting to leave the scene, the defendant

5

could have avoided physical combat by stopping his vehicle, instead of repeatedly striking, punching, and scratching the trooper.

Additionally, no view of the evidence would support a reasonable doubt that the degree of force used by the defendant was reasonable in the circumstances. Here, there was no evidence that Trooper Couture employed excessive or unnecessary force. Indeed, there was no evidence that Trooper Couture touched or harmed the defendant in any way. Furthermore, "[e]ven in circumstances where the defendant would be justified in using force in lawful defense of his person against a third person, he may not do so against a police or correction officer unless the officer uses excessive or unnecessary force." Commonwealth v. Francis, 24 Mass. App. Ct. 576, 579 (1987). Even assuming arguendo that Trooper Couture's attempt to stop the defendant from fleeing the scene could be construed as a show of some "force," there is no evidence of excessive or unnecessary force.

The defendant also argues that the judge created a substantial miscarriage of justice by failing to give the jury a "justification instruction" at trial. The defendant cites no Massachusetts authority or persuasive precedent for any such

6

instruction.[3]  We further note that Trooper Couture was in a marked cruiser and in full uniform on a well traveled public way.  Under these circumstances it was not error, much less a miscarriage of justice, for the judge to "fail" to provide such an instruction sua sponte.

Judgments affirmed.

By the Court (Milkey, Massing & Neyman, JJ.[4]),

Assistant Clerk

Entered:  April 11, 2024.

---

[3] The defendant cites to a case from the Indiana Court of Appeals, Cowans v. State, 53 N.E.3d 540 (Ind. Ct. App. 2016), for the proposition that a similar justification instruction should have been given to the jury.  This argument is unpersuasive where the Indiana Supreme Court subsequently "expressly disapprove[d]" that suggested instruction.  See Batchelor v. State, 119 N.E.3d 550, 563 (Ind. 2019).

[4] The panelists are listed in order of seniority.